# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### LUFKIN DIVISION

STATE OF TEXAS, et al.,

                *Plaintiffs*,

    v.

DONALD J. TRUMP, in his official capacity as
President of the United States

                *Defendant*,

    and

FRIENDS OF THE EARTH, HEALTHY
GULF, OCEANA, and TURTLE ISLAND
RESTORATION NETWORK,

    *Applicant-Intervenor-Defendants*.

Case No. 9:25-cv-00010-MJT

---

## APPLICANT-INTERVENOR-DEFENDANTS' MOTION TO INTERVENE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................iii

MOTION TO INTERVENE..........................................................................................1

BACKGROUND ..........................................................................................................1

     A.    Legal Background ...................................................................................1

     B.    Factual Background ...............................................................................2

     C.    Impacts of Oil and Gas Activity, Including Oil Spills................................4

MOVANTS FOR INTERVENTION ..............................................................................6

ARGUMENT ...............................................................................................................7

    I.    The Applicants Satisfy Rule 24(a)'s Test for Intervention as of Right. .................7

     A.    The Applicants' Motion to Intervene is Timely. .........................................8

     B.    The Applicants and Their Members Have Legally Protectable
          Interests. ...............................................................................................8

     C.    Disposition of this Case May Impair or Impede the Applicants'
          Interests. .............................................................................................10

     D.    None of the Existing Parties Adequately Represent Applicants'
          Interests. .............................................................................................11

    II.    Alternatively, the Court Should Permit the Applicants to Intervene
        Permissively.........................................................................................14

CONCLUSION...........................................................................................................15

LOCAL RULE CV-7 CERTIFICATE OF CONFERENCE .........................................17

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Am. Great Lakes Ports Ass'n v. Zukunft*,
    No. 16-01019, 2016 WL 8608457 (D.D.C. Aug. 26, 2016) ....................................................12

*Ass'n of Pro. Flight Attendants v. Gibbs*,
    804 F.2d 318 (5th Cir. 1986) ...............................................................................................8

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022)......................................................................................................11, 14

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ........................................................................... *passim*

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
    788 F.3d 312 (D.C. Cir. 2015)..............................................................................................14

*Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n*,
    127 F.4th 1294 (11th Cir. 2025) ............................................................................................2

*DeOtte v. Nevada*,
    20 F.4th 1055 (5th Cir. 2021) ...............................................................................................9

*Entergy Gulf States La., L.L.C. v. EPA*,
    817 F.3d 198 (5th Cir. 2016) ................................................................................................7

*Field v. Anadarko Petroleum Corp.*,
    35 F.4th 1013 (5th Cir. 2022) ...............................................................................................8

*Gulf Restoration Network v. Salazar*,
    683 F.3d 158 (5th Cir. 2012) ................................................................................................9

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998)................................................................................................12

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ..............................................................................9, 10, 11, 13

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
    884 F.2d 185 (5th Cir.1989) ...............................................................................................14

*Louisiana v. Haaland*,
    No. 23-01157, 2023 WL 5989052 (W.D. La. Sept. 14, 2023) ...........................................9, 14

*Nat. Res. Def. Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977)..............................................................................................15

*In re Oil Spill by Oil Rig Deepwater Horizon,*
  21 F.Supp.3d 657 (E.D. La. 2014) ..................................................................5

*Sierra Club v. Espy,*
  18 F.3d 1202 (5th Cir. 1994) ..............................................................8, 11, 14

*Sierra Club v. Glickman,*
  82 F.3d 106 (5th Cir. 1996) ........................................................................10, 14

*Students for Fair Admissions, Inc. v. Univ. of Tex.,*
  338 F.R.D. 364 (W.D. Tex. 2021) ................................................................14

*Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.,*
  332 F.3d 815 (5th Cir. 2003) ........................................................................15

*W. Energy All. v. Zinke,*
  877 F.3d 1157 (10th Cir. 2017) ....................................................................12

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,*
  834 F.3d 562 (5th Cir. 2016) .......................................................... *passim*

**Statutes**

43 U.S.C. § 1331 .............................................................................................1

43 U.S.C. § 1332 .............................................................................................1

43 U.S.C. § 1341 .............................................................................................2

43 U.S.C. § 1344 .............................................................................................1

**Federal Register**

25 Fed. Reg. 2352 (Mar. 19, 1960) ................................................................2

34 Fed. Reg. 5655 (Mar. 26, 1969) ................................................................2

48 Fed. Reg. 10605 (Mar. 14, 1983) ..............................................................1

89 Fed. Reg. 95101 (Dec. 2, 2024) ................................................................3

90 Fed. Reg. 8629 (Jan. 31, 2025) .................................................................2

**MOTION TO INTERVENE**

Pursuant to Local Rule CV-7, Friends of the Earth, Oceana, Healthy Gulf, and Turtle Island Restoration Network (collectively, "Applicants") respectfully move under Federal Rule of Civil Procedure 24 to intervene as defendants as a matter of right, or in the alternative, permissively, to protect their interests in preventing harm to the coastal environment from expanded oil and gas leasing. Fed. R. Civ. P. 24(a), (b). As detailed in the Certificate of Conference, counsel for Applicants has conferred with counsel for the existing parties pursuant to Local Rule CV-7(h). Plaintiffs and Federal Defendant oppose this motion.

**BACKGROUND**

**A.      Legal Background**

Plaintiffs challenge President Biden's withdrawal from future oil and gas leasing areas along the Atlantic coast, the Eastern Gulf of Mexico, and the Pacific coast. ECF Nos. 1, 1-1. This withdrawal protects areas of exceptional environmental and cultural significance. Plaintiffs seek relief declaring the withdrawal unlawful and enjoining Defendant from enforcing it.

The Outer Continental Shelf Lands Act ("OCSLA") governs the leasing, exploration, and development of oil and gas deposits in the Outer Continental Shelf, which consists of approximately 2.5 billion acres extending from the outer boundary of state waters, typically three miles from shore, to the outer boundary of the Exclusive Economic Zone, 200 nautical miles from shore. 43 U.S.C. § 1331(a); 48 Fed. Reg. 10605 (Mar. 14, 1983). OCSLA requires the Secretary of the Interior to manage oil and gas activities in the Outer Continental Shelf with consideration of the impacts on "the marine, coastal, and human environments," subject "to environmental safeguards," and by ensuring that development proceeds in a manner that will "prevent or minimize … damage to the environment." 43 U.S.C. §§ 1344(a)(1), 1332(3), (4), (6).

OCSLA also provides that "[t]he President of the United States may, from time to time,

withdraw from disposition any of the unleased lands of the outer Continental Shelf." 43 U.S.C.

§ 1341(a). There is a long history of presidential withdrawals from oil and gas leasing under

OCSLA dating back to 1960, when President Eisenhower withdrew areas of the Key Largo Coral

Reef Preserve. *See* 25 Fed. Reg. 2352 (Mar. 19, 1960). Since then, Presidents Nixon, George

H.W. Bush, Clinton, George W. Bush, Obama, Trump, and Biden have all issued withdrawals.

*E.g.*, 34 Fed. Reg. 5655 (Mar. 26, 1969). Decl. Brettny Hardy Supp. Mot. Intervene ("Hardy

Decl." filed herewith), Exs. 1, 10.

    **B.**    **Factual Background**

    On January 6, 2025, President Biden withdrew from oil and gas leasing areas in the

Pacific Ocean, the Atlantic Ocean, the Eastern Gulf of Mexico, and a small section of the Central

Gulf. ECF No. 1-1.[1] These withdrawals were made "[c]onsistent with principles of responsible

public stewardship, and with due consideration of the irreplaceable marine and coastal

environments, including wildlife and wildlife habitat, of" the withdrawn areas. *Id*. The

withdrawal emphasizes "the vulnerability of these ecosystems and coastal communities, where

limited or no oil and natural gas development has yet occurred." *Id*. President Biden "determined

that the environmental and economic risks and harms that would result from drilling in these

areas outweigh their limited fossil fuel resource potential," and "that these regions can remain

healthy and safe from the risk of oil spills resulting from development that would do little, if

anything, to meet the nation's energy needs." Hardy Decl. Ex. 2.

    The withdrawal will not impact current energy production. There is "no active oil and gas

exploration and development along the eastern U.S. Atlantic." Hardy Decl. Ex. 3. There are only

---

[1] President Trump has directed the "Gulf of Mexico" be renamed the "Gulf of America." Exec. Order No. 14172, 90 Fed. Reg. 8629, 8630 (Jan. 31, 2025). Because OCSLA and the challenged withdrawal refer to the "Gulf of Mexico," Applicants do as well. *See Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n,* 127 F.4th 1294, 1299 n.1 (11th Cir. 2025).

about "30 decades-old existing leases" in the Pacific and a dozen in the Eastern Gulf of Mexico—the withdrawal memos do not affect those existing leases. *Id*. It is the Central and Western Gulf of Mexico, two areas that President Biden did *not* withdraw from leasing, that are home to "more than 99%" of current offshore oil and gas production. Hardy Decl. Ex. 4, at 3.

The waters in each of the withdrawn areas support vital marine species, coastal ecosystems, and local economic activity that depend on clean water free from oil-and-gas infrastructure, noise, and pollution. The Eastern Gulf of Mexico, for example, is the only part of the Gulf largely free from offshore drilling. It serves as irreplaceable habitat for marine wildlife, including whales, dolphins, and sea turtles, and as an important military testing area. Hardy Decl. Exs. 5, at 110–11, Ex. 6. The Gulf of Mexico is the exclusive home of the critically endangered Rice's whale, a species that may have fewer than 50 individuals remaining and which is especially reliant on the undeveloped habitat in the Eastern Gulf. Ex. 5 at 111; *see also id.* at 203–04. Millions of residents in Gulf Coast states depend on this productive marine environment to support coastal fisheries, tourism, and recreational opportunities. *Id*. at 118–20, 277. Floridians and their representatives have long opposed drilling in the Eastern Gulf. Hardy Decl. Exs. 7, 8. The Department of Defense has likewise supported a leasing moratorium in this area because it is an "irreplaceable national asset used … to develop and maintain the readiness of our combat forces." Hardy Decl. Ex. 6; *see also* Hardy Decl. Ex. 9. Much of the Eastern Gulf has been protected for decades, most recently by President Trump through 2032. Hardy Decl. Ex. 10.

Pacific coastal waters similarly provide enormous ecological, scientific, and economic benefits. Hardy Decl. Ex. 5, at 94–101. California alone has five National Marine Sanctuaries that are rich in natural resources and drive California's economy. *Id*. at 90–91, 100, 253; 89 Fed. Reg. 95101 (Dec. 2, 2024); *see also* Hardy Decl. Ex. 11. Pacific coastal areas contain an array of

marine species, including whales, sea otters, seals, sea lions, sea turtles, and seabirds. Hardy Decl. Ex. 5, at 90–91, 100, 253. The region's economy depends on these areas for tourism, marine transport, recreation, and fisheries. *Id*. at 101–02. No new leasing has taken place in the Pacific since 1984. Hardy Decl. Ex. 4, at 4-3.

The Atlantic continental shelf is "one of the most productive ecosystems in the world." Hardy Decl. Ex. 5, at 266. These waters provide diverse habitats, harbor important fish and shellfish populations, are home to five species of endangered and threatened sea turtles, and are the feeding, calving, and migration corridor for the endangered North Atlantic Right whale. *Id*. at 126–30, 130–34. It includes unique and outstanding geological features, including dozens of undersea canyons—some deeper than the Grand Canyon—rich in marine life. Hardy Decl. Ex. 12. Importantly, this area remains largely unmarked by industrial oil development. *Id*.; Hardy Decl. Ex. 5, at 135. Businesses along the Atlantic coast—including fishing, tourism, and recreation industries—are heavily dependent on the health of this ocean ecosystem. *Id*. at 134–35. It is also an important area for military training. Hardy Decl. Ex. 13.

###     C.     Impacts of Oil and Gas Activity, Including Oil Spills.

Oil and gas activity harms the coastal environment and communities in multiple ways. Offshore oil and gas operations cause oil spills with long-lasting damage. *See, e.g*., Hardy Decl. Ex. 5, at 52–55. Oil spills harm coral reefs, marine plants, marine mammals, sea turtles, oysters, and fish, which in turn damages shorelines, subsistence activities, fishing, tourism, and the health of onshore communities. *Id*. at 275–78. Racial and ethnic minority groups are disproportionately exposed to oil- and gas-related hazards, including oil spills. *E.g.*, Hardy Decl. Ex. 14.

Larger spills are particularly damaging, causing catastrophic damage to communities and ecosystems. The Gulf still suffers devastating impacts from multiple spills greater than 1,000 barrels. *See* Hardy Decl. Ex. 15, at 46, 48. For instance, the Gulf has yet to recover from the

effects of its worst ecological disaster—the April 2010 *Deepwater Horizon* explosion, which killed eleven people and leaked over 130 million gallons of oil, devastating countless marine species and contaminating thousands of miles of ocean and coastal habitat. *See generally In re Oil Spill by Oil Rig Deepwater Horizon*, 21 F.Supp.3d 657 (E.D. La. 2014). Scientists estimate the spill caused death or serious harm to billions of animals, including many endangered species. *See* Hardy Decl. Ex. 16, at 4-599; *id.* at 4-623, 4-624, 4-631. *Deepwater Horizon* had a severe human toll. Workers involved with cleanup efforts continue to suffer health effects. Hardy Decl. Ex. 17, at 6, 7. The spill caused fishery closures that led to an estimated $247 million loss for the Gulf's commercial fishing industry. Hardy Decl. Ex. 18, at 332, 334–35.

The Gulf is not the only place to suffer from the impacts of devastating spills—in fact, catastrophic spills have occurred in every region that has hosted offshore oil and gas development. In 1969, for example, the nation's first large offshore oil spill occurred in the Santa Barbara Channel after a blow-out. Hardy Decl. Ex. 19; *see also* Hardy Decl. Exs. 20, 21.

Oil and gas activity also causes other harms. It results in noise from seismic surveys, construction, and general operations. *See, e.g.*, Hardy Decl. Ex. 5, 52–55. Operating offshore platforms also produces air, water, and debris pollution. *Id.* at 53–55, 146, 150, 154, 158. Heavy vessel traffic associated with oil and gas operations also strike and kill animals and harm them with noise. *Id.* at 44–45, 53. Offshore platforms, pipelines, and associated water pollution can shut down access to fishing grounds and introduce contaminants that can persist in fish for decades. *See, e.g.*, *id.* at 146, 150, 154, 158, 179. Facilities and associated vessel traffic can also interfere with "the sustainable harvest, transport, sale, processing or storage of fish," impacting important cultural practices, nutrition, community resilience, and cultural identity. *Id.* at 179–80. Installation of pipelines destroy bottom habitat, cause noise, and can result in additional spills.

*Id*. at 53, 54.

## MOVANTS FOR INTERVENTION

FRIENDS OF THE EARTH is a 501(c)(3) nonprofit organization with offices in Washington, D.C. and Oakland, California. Declaration of Hallie Templeton ¶ 2. Friends of the Earth has more than 4 million activists and over 244,000 members. *Id*. ¶ 2. For more than 50 years, it has championed a clean and sustainable environment and protection of the nation's public lands and waterways. *See id*. ¶¶ 3, 7. Friends of the Earth has long fought to halt new fossil fuel development, with a particular emphasis on the Gulf of Mexico, where it has used advocacy, litigation, and outreach to stop expanded offshore oil and gas drilling. *Id.* ¶¶ 7–11.

OCEANA is a nonprofit organization headquartered in Washington D.C. dedicated to protecting and restoring the world's oceans through policy, advocacy, science, law, and public education. Declaration of Beth Ann Lowell Niemiec ¶¶ 2–4. Oceana has over one million members and supporters in the United States. *Id*. ¶ 2. Oceana uses science and advocacy to reduce threats to communities by preventing new offshore oil drilling and promoting responsible offshore wind energy. *Id*. ¶ 3. Oceana's staff and members have opposed offshore oil drilling and have dedicated significant resources to securing permanent protections from offshore oil and gas drilling, including the withdrawal challenged here. *Id*. ¶¶ 5–15.

HEALTHY GULF is a network of community, conservation, environmental, and fishing groups and individuals committed to empowering people to protect and restore the natural resources of the Gulf of Mexico. Healthy Gulf is headquartered in New Orleans, Louisiana and its members live in the five Gulf states and nationwide. Declaration of Martha Collins ¶¶ 1, 4. On behalf of its members, Healthy Gulf has long been actively involved in efforts to strengthen oversight of the offshore oil and gas industry and end new oil and gas leasing in the Gulf, including through public education, administrative advocacy, and litigation. *Id*. ¶¶ 6–8, 10–13.

TURTLE ISLAND RESTORATION NETWORK (TIRN) is a nonprofit organization with its principal place of business in Olema, California and a satellite office in Galveston, Texas. Declaration of Joanie Steinhaus ¶ 3. TIRN works to mobilize people in local communities around the world to protect marine wildlife and the oceans and inland watersheds that sustain them. *Id*. It has over 26,143 supporters located in the Gulf of Mexico region and 100,957 members and supporters across the United States and the rest of the world. *Id* ¶ 5. TIRN has long opposed oil and gas expansion in the Gulf and elsewhere. *Id*. ¶¶ 6, 7.

## ARGUMENT

## I.    The Applicants Satisfy Rule 24(a)'s Test for Intervention as of Right.

Applicants satisfy all requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). The Fifth Circuit has translated the Rule into a four-part test:

> (1) the application … must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)). The Rule reflects a "broad policy favoring intervention," *id*. at 569, and "'is to be liberally construed,' with 'doubts resolved in favor of the proposed intervenor,'" *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (citation omitted).

Applicants satisfy each prong of this test. This motion is timely, coming within a month after Defendant's responsive pleading. Applicants have legally protectable interests in permanent protection of the areas at issue, which may be impaired by the relief Plaintiffs seek, which would allow oil and gas exploration, leasing, and development in these areas. Finally, no other party adequately represents Applicants' interests: None shares their ultimate objective of stopping the

expansion of oil and gas exploration, leasing, and development in the areas protected by the action Plaintiffs challenge.

###### A.    The Applicants' Motion to Intervene is Timely.

Timeliness is contextual and is determined from all the circumstances. *Wal-Mart Stores*, 834 F.3d at 565. "Generally, filing a motion to intervene as soon as an intervenor realizes its interests are not adequately protected is sufficient to meet the timeliness requirement." *Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1018 (5th Cir. 2022) (citation omitted).

Applicants' request is timely. Little time has passed since Applicants reasonably should have known their interests would not be protected in this case: Applicants move to intervene just over three months after Plaintiffs filed their complaint and within a month after Defendant filed an answer. ECF Nos. 1, 5; *see, e.g.*, *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 17-00235, 2017 WL 6059303, at *3–4 (E.D. Tex. Dec. 7, 2017) (request timely where intervenors were aware their interests were affected four months prior to filing their motions); *Ass'n of Pro. Flight Attendants v. Gibbs*, 804 F.2d. 318, 321 (5th Cir. 1986) (holding five-month lapse was not unreasonable). No other development has taken place: This motion is filed prior to the scheduling conference in the Court's recent Rule 16 order. ECF No. 6; *see, e.g.*, *Wal-Mart Stores*, 834 F.3d at 565–66 (motion timely when filed "before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded").

For the same reasons, there can be no real claim of prejudice. At this early stage of litigation, delay is not an issue. *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation.").

###### B.    The Applicants and Their Members Have Legally Protectable Interests.

An applicant must possess an interest relating to the property or transaction that is the

subject of the litigation. Fed. R. Civ. P. 24(a)(2). An interest is sufficient "if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (citation omitted). The interest test is not rigid. Rather, it is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wal-Mart Stores*, 834 F.3d at 566 n.2 (citation omitted). "What is important is 'whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way.'" *DeOtte v. Nevada*, 20 F.4th 1055, 1068 (5th Cir. 2021) (citation omitted); *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 167 (5th Cir. 2012).

Applicants have legally protected interests related to the challenged withdrawal. Applicants have long opposed oil and gas development in the areas specifically protected in the withdrawal and have long advocated for permanent protections. The withdrawal arose after more than a decade of Applicants' prior advocacy efforts for the government to withdraw these areas to protect vital coastal communities, wildlife, economies, and cultures from the dangers of oil development. Lowell Niemiec Decl. ¶¶ 5–6, 22 (describing Oceana's work to obtain bipartisan opposition to offshore drilling and to encourage President Biden to withdraw areas in the Atlantic, Pacific, and Gulf of Mexico); Templeton Decl. ¶¶ 7–10 (similar); Steinhaus Decl. ¶¶ 5–7, 13 (*similar*); Collins Decl. ¶¶ 11–14. That suffices to meet this requirement: The interest requirement is "judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group" and met where potential intervenors are defending an action that their advocacy helped cause to happen. *Louisiana v. Haaland*, No. 23-01157, 2023 WL 5989052, at *2 (W.D. La. Sept. 14, 2023) (quoting *Brumfield v. Dodd*, 749 F.3d 339, 344

(5th Cir. 2014)).

Applicants and their members also have cognizable recreational, aesthetic, and research interests in protecting the areas that are the subject of the withdrawal memorandum. Lowell Niemiec Decl. ¶¶ 16–21; Templeton Decl. ¶¶ 4, 5, 11; Steinhaus Decl. ¶¶ 8–10. For instance, members enjoy boating, sailing, swimming, snorkeling, scuba diving, viewing and photographing wildlife, or harvesting clams and other shellfish in areas permanently protected by the challenged action—activities which depend on keeping these areas free from the harms caused by offshore drilling. Templeton Decl. ¶¶ 4–5; Lowell Niemiec Decl. ¶ 16; Collins Decl. ¶¶ 4, 15–16. Applicants have acted to advance those interests through years of advocacy. Lowell Niemiec Decl. ¶¶ 7–15; Templeton Decl. ¶¶ 7–11; Collins Decl. ¶¶ 9–11, 13–15; Steinhaus Decl. ¶¶ 3, 6–7. These interests are sufficient to support their intervention of right in this case.

### C.      Disposition of this Case May Impair or Impede the Applicants' Interests.

Disposition of this case threatens to impair or impede Applicants' interests. An applicant need only show that "the action *may* as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). "[A] would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Brumfield*, 749 F.3d at 345 n.2 (citation omitted).

A decision for Plaintiffs would directly impair Applicants' interests by effectively nullifying their many years of effort and investment. *See, e.g.*, Lowell Niemiec Decl. ¶¶ 5–7, 22. And it would require Applicants to expend their limited resources to refocus their advocacy efforts, limiting their ability to address ocean ecosystem needs in other areas. *See La Union*, 29 F.4th at 307. *E.g.*, Collins Decl. ¶¶ 14, 16; Templeton Decl. ¶¶ 11–12. A ruling in Plaintiffs' favor would also chill the adoption of future protections. *See, e.g.*, *Sierra Club v. Glickman*, 82 F.3d 106, 109–10 (5th Cir. 1996) ("[T]he *stare decisis* effect of an adverse judgment constitutes

a sufficient impairment to compel intervention." (citation omitted)).

Plaintiffs' requested relief would also harm Applicants' recreational, aesthetic, and other interests described above. *See supra* Section B. If Plaintiffs prevail, protected areas would again be open to new oil and gas leasing, exploration, and development that harms the coastal communities and vital marine species and ecosystems that these interests depend upon. *Id.* It would also increase the likelihood of leaks and spills that damage Applicants' previous and ongoing ecosystem restoration work. *E.g.*, Steinhaus Decl. ¶¶ 11, 13.

### D. None of the Existing Parties Adequately Represent Applicants' Interests.

Establishing a potential for inadequate representation "present[s] proposed intervenors with only a minimal challenge." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195 (2022). Potential intervenors "need not show that the representation by existing parties will be, for certain, inadequate," only that it "may be." *La Union*, 29 F.4th at 308–09 (quoting *Texas*, 805 F.3d at 661); *see also Espy*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). The adequate representation requirement has "teeth"—and thus can be a basis to deny intervention—only where one of "two presumptions of adequate representation" apply. *Brumfield*, 749 F.3d at 345. The first does not apply here because it arises "where one party is a representative" of the prospective intervenor by law. *Id.*; *see La Union*, 29 F.4th at 308. No party is charged with representing Applicants' interests.

The second presumption applies if a party maintains the "same ultimate objective" as Applicants. *See La Union*, 29 F.4th at 308 (citation omitted). Here, no party shares an objective with Applicants. Applicants' ultimate objective is to stop the expansion of new oil and gas leasing and development throughout the Outer Continental Shelf, including in the areas protected by President Biden's withdrawal, and to defend the withdrawal as a lawful exercise of power under Section 12(a) of OSCLA and the Constitution. Plaintiffs, of course, do not share that

11

objective—they aim to enjoin the withdrawal. ECF No. 1, at 16. The government may have once shared that objective, but it does not anymore. Shortly after Plaintiffs filed suit, President Trump took office and issued an executive order that "revoked" the withdrawal. Hardy Decl. Ex. 22, at Sec. 2. The Secretary of the Interior then signed Secretarial Order 3420, announcing that "President Trump has revoked the withdrawals . . . that the Biden administration issued" and directing the department to "take all actions available to expedite the leasing … for oil and gas exploration and production." Hardy Decl. Ex. 23. Given these clear statements that the administration is not abiding by the withdrawal, Defendant may ultimately agree with the Plaintiffs in this litigation that the challenged withdrawal should be set aside. The Applicants and Defendant thus do not share the same ultimate objective. *See, e.g.*, *Am. Great Lakes Ports Ass'n v. Zukunft*, No. 16-01019, 2016 WL 8608457, at *4 (D.D.C. Aug. 26, 2016) (finding interests may not be adequately represented because government might decide to settle with plaintiff).[2]

To be sure, Defendant may oppose Plaintiffs' complaint or seek to dismiss it on jurisdictional grounds, given that President's Trump's revocation has already given Plaintiffs the relief they seek. Even if it "vigorously oppose[s]" Plaintiffs' complaint, the "ultimate-objective presumption" still does not apply because Defendant has "more extensive interests to balance than do" Applicants. *Brumfield*, 749 F.3d at 345–46. Defendant may defend the withdrawal in this litigation while pursuing a course to defend President Trump's revocation of that withdrawal. Hardy Decl. Ex. 22, at Sec. 2. Applicants "do not have th[at] latter … interest[]." *Brumfield*, 749 F.3d at 346. This "lack of unity in all objectives … is sufficient to demonstrate

---

[2] The mere possibility of "unanticipated policy shifts" supports the conclusion that the government does not provide adequate representation. *W. Energy All. v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998). Here, the case for intervention is stronger still because that policy shift already has occurred.

that the representation may be inadequate." *Id.*

In any event, even if the same-objective presumption applied, Applicants "overcome" that presumption because there is an "adversity of interest" between Applicants and Defendant. *La Union*, 29 F.4th at 308 (citation omitted). Adversity is present where the parties "diverge" with "how to carry out the [shared] ultimate objective." *Id.* Thus, the presumption is rebutted where a defendant responds to a complaint challenging a policy by accepting that some change is "needed," while a potential intervenor would "urge[] that those policies need[] no adjustment." *Brumfield*, 749 F.3d at 346. So too where a defendant "prefer[s] to not resolve [a] case on the merits at all," opting to defend against the complaint on threshold grounds or not "substantively defend[ing] the constitutionality of the law in th[e] lawsuit." *La Union*, 29 F.4th at 308. Where a potential intervenor seeks to argue a "regulatory scheme is constitutionally valid," but the defendant "merely seeks to defend the present suit and would accept a procedural victory," the defendant does not adequately represent the intervenor's interest. *Wal-Mart*, 834 F.3d at 569.

These features favoring intervention are present here. Applicants would defend President Biden's withdrawal both on threshold grounds and on the merits: A challenge to the withdrawal no longer presents a live controversy, and even if it does, the withdrawal is consistent with OSCLA's requirements and the Constitution, and no change in policy is needed. Defendant has yet to make any threshold argument. Its answer claims that it will defend on jurisdictional grounds, ECF No. 5, at 7, but even here, Defendant has failed to take the obvious step to move to dismiss the complaint. In any event, it remains unlikely that Defendant will fully defend on the merits based on its admitted change in policy. *See supra* p. 12. Having abandoned the withdrawal, Defendant will be "limit[ed] [in] the range of arguments [it] can advance" to defend the withdrawal, and there no doubt will be some "arguments" Applicants would advance that the

13

Defendant "cannot make given the differences in the objectives." *Wal-Mart Stores*, 834 F.3d at 569. Defendant may stick to procedural arguments to avoid opining on the withdrawal's lawfulness. Or, to the extent it engages on the merits, it may make arguments to defend President Trump's asserted authority to revoke the withdrawal. In short, while Applicants cannot "say for sure" that Defendant's "more extensive interests will in fact result in inadequate representation," "they might, which is all that … rule [24(a)] requires." *Brumfield*, 749 F.3d at 346.[3]

It is enough to highlight arguments that Defendant "cannot make given the differences in … objectives." *Wal-Mart*, 834 F.3d at 569. But the adversity of interests runs deeper still. When it comes to applying OSCLA, environmental groups' interests differ from those of the government because the federal government is "statutorily required to consider" not just "environmental factors" but also "energy needs and other economic concerns." *See Louisiana*, 2023 WL 5989052, at *3 (citing 43 U.S.C. § 1344(a)(1)–(3)). Applicants, by contrast, each are focused on environmental protection that only partially align with the numerous and varied statutory obligations placed on the government. *See supra* pp. 6–7. That divergence supports intervention here. *See, e.g.*, *Espy*, 18 F.3d at 1208 (holding agency's "representation of the intervenors' interest is inadequate" because it "represent[s] the broad public interest, not just the economic concerns of the timber industry"); *Sierra Club*, 82 F.3d at 110.

## II.    Alternatively, the Court Should Permit the Applicants to Intervene Permissively.

If the Court denies intervention as of right, Applicants request that the Court exercise its "broad discretion" to grant permissive intervention under Rule 24(b). *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir.1989); *Students for Fair*

---

[3] If this case proceeds to judgment, Defendant and Applicants may disagree over how to proceed. *See Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015). Defendant may decline to seek a stay or appeal. *See Berger*, 597 U.S. at 198–99.

*Admissions, Inc. v. Univ. of Tex.*, 338 F.R.D. 364, 373 (W.D. Tex. 2021). "[P]ermissive intervention is appropriate where 'an applicant's claim or defense and the main action have a question of law or fact in common,'" *Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 824 (5th Cir. 2003) (quoting Fed. R. Civ. P. 24(b)(2)), and will not "unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3).

Applicants satisfy Rule 24(b)'s requirements. Applicants seek to defend the protections afforded under President Biden's withdrawal. Given this overlap, the interests Applicants seek to protect and the defenses they seek to assert share common questions of both law and fact with the claims in this case. Applicants' participation will aid the Court by bringing to bear their expertise on the reasons protections in these areas are necessary. *See, e.g.*, *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912–13 (D.C. Cir. 1977). Applicants' perspective based on years of advocacy will equip the Court to understand the broad range of support for challenged withdrawal and the harm that will occur if those protections are removed—information that will not be provided by either party currently in the suit.

Allowing permissive intervention will not "unduly delay or prejudice the adjudication of the original parties." Fed. R. Civ. P. 24(b)(3). Applicants will file joint pleadings and briefs, and seek to intervene early in the lawsuit, prior to any substantive briefing or rulings. Applicants should be permitted to intervene permissively.

## CONCLUSION

For the above reasons, Applicants respectfully ask this Court to grant them intervention as of right, or, in the alternative, by permission to protect their and their members' interests in safeguarding valuable coastal communities along the Atlantic, Pacific, and Eastern Gulf coasts from the dangers associated with expanded oil and gas leasing.

Respectfully submitted this 28th day of April, 2025.

*/s/ Rebecca Ramirez*
Rebecca Ramirez (TX Bar #24126749)
EARTHJUSTICE
845 Texas Ave., Suite 200
Houston, TX 77002
281-698-7557 | Telephone
rramirez@earthjustice.org

Brettny Hardy (*pro hac vice* forthcoming)
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA 94111
415-217-2000 | Telephone
bhardy@earthjustice.org

Benjamin P. Chagnon (*pro hac vice* forthcoming)
EARTHJUSTICE
1001 G Street NW, Suite 1000
Washington, D.C. 20001
202-745-5210 | Telephone
bchagnon@earthjustice.org

Lauren E. Godshall (TX Bar #24050668)
EARTHJUSTICE
1505 Colony Place
Metairie, LA 70003
773-828-0836 | Telephone
lgodshall@earthjustice.org

*Attorneys for Intervenor-Defendants Friends of the Earth, Healthy Gulf, Oceana, and Turtle Island Restoration Network*

**LOCAL RULE CV-7 CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h) and (i), Counsel for Applicants certifies that the parties have met and exchanged in good faith their views on this motion prior to filing. Specifically, counsel for Applicants contacted counsel for Plaintiffs via email and Federal Defendant via telephone on April 16 and April 15, respectively, to ascertain initial positions to determine whether a conference was necessary. Plaintiffs responded via email on April 18 that they would oppose the motion and Federal Defendant responded via email on April 22 that it would oppose the motion. The parties agreed to a hybrid video/phone personal conference on April 24 at 2:00 p.m. Central Time to exchange views and attempt to resolve the motion or narrow their differences. The following counsel attended the conference: Plaintiff State of Texas—Zachary Berg and Steve Loomis; Plaintiff W&T Offshore—Yasser Madriz; Federal Defendant—Luke Hyack; Applicants—Steve Mashuda and Brettny Hardy.

At the conference, Applicants briefly summarized the reasons that they meet the standards for intervention as of right under Fed. R. Civ. P. Rule 24(a), or alternatively, meet the test for permissive intervention under Fed. R. Civ. P. 24(b). Plaintiffs explained that they oppose Applicants' intervention because Applicants lack standing, lack a substantial interest in the case, that Federal Defendant represented Applicants' interests, and that the number of groups in the coalition of applicants would not aid the timely resolution of Plaintiffs' claims. Federal Defendant explained that it opposed because the groups lacked a sufficient interest in the case to intervene. Applicants responded to these points and explained their views, but the parties' discussion could not resolve their differences. The parties concluded that their good faith discussions had conclusively ended in an impasse, leaving an open issue for the court to resolve on the motion.

Respectfully submitted this 28th day of April, 2025.

*/s/ Rebecca Ramirez*
Rebecca Ramirez (TX Bar #24126749)
EARTHJUSTICE
845 Texas Ave., Suite 200
Houston, TX 77002
281-698-7557 | Telephone
rramirez@earthjustice.org

Brettny Hardy (*pro hac vice* forthcoming)
EARTHJUSTICE
50 California Street, Suite 500
San Francisco, CA 94111
415-217-2000 | Telephone
bhardy@earthjustice.org

Benjamin P. Chagnon (*pro hac vice* forthcoming)
EARTHJUSTICE
1001 G Street NW, Suite 1000
Washington, D.C. 20001
202-745-5210 | Telephone
bchagnon@earthjustice.org

Lauren E. Godshall (TX Bar #24050668)
EARTHJUSTICE
1505 Colony Place
Metairie, LA 70003
773-828-0836 | Telephone
lgodshall@earthjustice.org

*Attorneys for Intervenor-Defendants Friends of the Earth, Healthy Gulf, Oceana, and Turtle Island Restoration Network*

18