# EXHIBIT 9



# Gulf of Mexico Energy Security Act (GOMESA): Background and Current Issues

Updated December 21, 2022

Congressional Research Service
https://crsreports.congress.gov
R46195

CRS REPORT
Prepared for Members and
Committees of Congress

*Congressional Research Service*
Informing the legislative debate since 1914

**SUMMARY**

R46195

December 21, 2022

**Laura B. Comay**
Specialist in Natural Resources Policy

# Gulf of Mexico Energy Security Act (GOMESA): Background and Current Issues

Almost all offshore oil and natural gas production on the U.S. outer continental shelf (OCS) occurs in the Gulf of Mexico. Federal oil and gas leasing in the Gulf is governed primarily by two laws—the Outer Continental Shelf Lands Act (OCSLA; 43 U.S.C. §§1331-1356b), which broadly controls federal energy leasing throughout the OCS; and the Gulf of Mexico Energy Security Act of 2006 (GOMESA; 43 U.S.C. §1331 note), which pertains specifically to leasing in the Gulf region.

GOMESA, enacted in December 2006, addressed where oil and gas leasing can take place in the Gulf and how federal revenues from Gulf oil and gas development are to be distributed. Concerning revenues, GOMESA established a framework for sharing revenues from certain qualified oil and gas leases with the "Gulf producing states" of Alabama, Louisiana, Mississippi, and Texas, as well as with a nationwide outdoor recreation program—the state assistance program of the Land and Water Conservation Fund (LWCF; 54 U.S.C. §§200301 et seq.). The law provides for 37.5% of revenues from certain leases to be shared with the four states collectively and for 12.5% to be shared with the LWCF state assistance program. A cap of $500 million for the states and LWCF combined applies in most years. The 117th Congress has considered changes to GOMESA's revenue-sharing provisions. S. 2130 and H.R. 9049 would remove the cap on revenues shared with the four Gulf coast states and the LWCF, and other proposals have sought to increase the state-shared percentage, to expand the set of leases from which revenues can be shared, or to add Florida as a revenue-sharing state. Some bills have proposed new uses of Gulf oil and gas revenues for federal conservation programs not currently funded under the law. Also at issue are questions about whether future oil and gas revenues will be sufficient to fulfill existing and proposed purposes, including considerations about the optimal extent of federal offshore oil and gas leasing in the Gulf and how various policy choices would affect revenue amounts. Proposed changes to oil and gas revenue sharing under GOMESA may continue to be of interest in the 118th Congress.

With respect to areas of the Gulf of Mexico available for leasing, GOMESA imposed an oil and gas leasing moratorium through June 30, 2022, in most of the Eastern Gulf (off the Florida coast). Although the GOMESA moratorium has expired, this area was additionally withdrawn from leasing through June 30, 2032, by President Trump, using his authority under Section 12(a) of the OCSLA (43 U.S.C. §1341(a)). Some Members of Congress and other stakeholders seek to reinstate the leasing moratorium in legislation for a specified time or permanently (e.g., H.R. 5707 and H.R. 8980 in the 117th Congress); others, including some industry groups, support an end to leasing prohibitions so that leasing could take place in the area. Debate over the future disposition of the moratorium area has addressed the potential for hydrocarbon development in conjunction with current uses of the area for military testing and training, commercial fishing, and recreation. The Department of Defense (DOD) generally has supported a leasing moratorium based on its testing and training in the area and has indicated that, from a defense standpoint, stipulations and restrictions on oil and gas activities would be necessary if the area were to be opened to leasing. Another question concerns whether the moratorium area also should be restricted from offshore wind leasing in addition to oil and gas, as BOEM moves toward opening parts of the Gulf to wind development. P.L. 117-169, commonly known as the Inflation Reduction Act of 2022, authorized offshore wind leasing in the moratorium area in August 2022. Some subsequently introduced legislation (H.R. 8980 and S. 4943 in the 117th Congress) would prohibit wind leasing in this area.

# Contents

Background ................................................................................................................................... 2
    Distribution of Gulf Oil and Gas Revenues Prior to GOMESA ............................................. 2
    Eastern Gulf Leasing Prohibitions Prior to GOMESA ............................................................ 3
    GOMESA's Provisions ............................................................................................................ 3
Offshore Revenue Sharing Under GOMESA ................................................................................ 4
    Legislative Proposals ............................................................................................................... 7
    Selected Issues for Congress ................................................................................................... 8
GOMESA Moratorium ................................................................................................................. 11
    Legislative Proposals ............................................................................................................. 12
    Selected Issues for Congress ................................................................................................. 12
Looking Ahead ............................................................................................................................. 14

# Figures

Figure 1. GOMESA Revenue-Sharing and Moratorium Areas ....................................................... 5

# Tables

Table 1. Annual Outer Continental Shelf (OCS) Oil and Gas Revenues: Gulf of Mexico
   Share of Total, FY2013-FY2022 ................................................................................................ 2
Table 2. GOMESA Disbursements to States/CPSs and the LWCF State Grant Program,
   FY2009-FY2022 ........................................................................................................................ 6

# Contacts

Author Information ....................................................................................................................... 15

The moratorium imposed by GOMESA Section 104 expired on June 30, 2022. In January 2018, BOEM released a draft five-year oil and gas leasing program that would have scheduled new lease sales in the Eastern Gulf starting in 2023, after the expiration.[56] However, in September 2020, President Trump withdrew the moratorium area from leasing disposition for an additional decade (through June 30, 2032).[57] Although GOMESA's moratorium had specifically referred to "oil and gas leasing,"[58] President Trump's memorandum withdrew the moratorium area from leasing disposition broadly and was interpreted to apply to offshore wind leasing as well as oil and gas leasing.[59] In August 2022, P.L. 117-169, commonly known as the Inflation Reduction Act of 2022 (IRA), authorized offshore wind leasing in the moratorium area.[60]

## Legislative Proposals

Some bills in the 117th Congress have sought to extend GOMESA's moratorium legislatively, and in some cases to permanently prohibit oil and gas leasing in the moratorium area. These bills include H.R. 2836, H.R. 5707, H.R. 8980, S. 28, and S. 4943 (in addition to legislation such as S. 1115 that would prohibit new oil and gas leasing throughout the OCS). By contrast, other 117th Congress legislation—H.R. 4334—would mandate oil and gas lease sales in the GOMESA moratorium area. None of the proposals has advanced beyond the hearing stage in the 117th Congress. In the 116th Congress, H.R. 205, the Protecting and Securing Florida's Coastline Act of 2019, passed the House of Representatives. It would have amended GOMESA to extend the Eastern Gulf moratorium indefinitely, thus precluding future oil and gas leasing in the area.

As discussed, the IRA authorized offshore wind leasing in the GOMESA moratorium area in August 2022. Some subsequently introduced bills—H.R. 8980 and S. 4943—would prohibit wind leasing east of the Military Mission Line through June 30, 2032.[61]

## Selected Issues for Congress

Congress may consider a number of issues related to the leasing prohibitions in the Eastern Gulf. In general, Members have debated the economic benefits or drawbacks of hydrocarbon development in the area, with some oil and gas industry advocates contending that Eastern Gulf development could contribute billions of dollars annually to the nation's gross domestic product, mainly through contributions to Gulf state economies.[62] By contrast, some other stakeholders have focused on potential adverse economic consequences, such as costs of potential oil spills to

---

[56] For information on BOEM's oil and gas leasing program, see CRS Report R44692, *Five-Year Offshore Oil and Gas Leasing Program: Status and Issues in Brief*, by Laura B. Comay.

[57] President Trump, September 2020 withdrawal memorandum. The President's withdrawal authority is at 43 U.S.C. §1341(a).

[58] P.L. 109-432, §104, is titled "Moratorium on Oil and Gas Leasing in Certain Areas of the Gulf of Mexico."

[59] For further discussion, see CRS Report R46970, *Offshore Wind Energy: Federal Leasing, Permitting, Deployment, and Revenues*, by Laura B. Comay and Corrie E. Clark.

[60] P.L. 117-169, §50251.

[61] The bills also would prohibit wind leasing (and other types of energy development) west of the Military Mission Line and in Atlantic Ocean areas off the east coast of Florida if DOD reported anticipated adverse impacts related to national security, military readiness, or testing capabilities from oil, gas, wind, or other types of energy development in those areas.

[62] American Petroleum Institute and Calash LLC, *The Economic Impacts of Allowing Access to the Eastern Gulf of Mexico for Oil and Natural Gas Exploration and Development*, 2018, at http://www.noia.org/wp-content/uploads/2018/04/180309-Calash-Eastern-Gulf-Development-Economic-Impacts-Report-Final.pdf.

the commercial fishing, tourism, and recreation sectors.[63] Also under consideration are the climate impacts of Gulf oil and gas leasing, including through BOEM's analysis of potential energy substitutes for Gulf oil and gas.[64] Two issues specific to the Eastern Gulf are as follows.

- **Military readiness concerns.** The area east of the Military Mission Line in the Eastern Gulf provides the largest overwater DOD test and training facility in the continental United States.[65] DOD historically has expressed the need for an ongoing oil and gas leasing moratorium in the Eastern Gulf to accommodate military testing and training.[66] In 2018, DOD stated that "sufficient surface limiting stipulations and/or oil and gas activity restrictions" would be required if oil and gas leasing were to resume in the moratorium area, which some stakeholders interpreted as signaling a greater DOD openness to future oil and gas activities than had previously been expressed.[67] The 2018 report did not clarify what types of oil and gas lease stipulations and restrictions might be necessary to accommodate testing and training activities in the Eastern Gulf.

- **Offshore wind leasing in the Eastern Gulf.** BOEM has begun to formally consider offshore wind leasing in the Gulf of Mexico.[68] The agency has identified two wind energy areas (WEAs) for potential leasing in the Gulf of Mexico, neither of which is in the GOMESA moratorium area.[69] The IRA authorized offshore wind leasing in the moratorium area, as well as in previously withdrawn areas of the southern Atlantic.[70] Some Members of Congress have opposed wind leasing in the GOMESA moratorium area, stating that it would jeopardize

---

[63] Studies documenting costs to these industries from the 2010 *Deepwater Horizon* oil spill include BOEM, *An Analysis of the Impacts of the Deepwater Horizon Oil Spill on the Gulf of Mexico Seafood Industry*, 2016, at https://www.boem.gov/ESPIS/5/5518.pdf; and BOEM, *Assessing the Impacts of the Deepwater Horizon Oil Spill on Tourism in the Gulf of Mexico Region*, 2014, at https://www.boem.gov/ESPIS/5/5451.pdf.

[64] See BOEM, *2023-2028 National Outer Continental Shelf Oil and Gas Leasing: Proposed Program*, July 2022, Section 5.3, at https://www.boem.gov/oil-gas-energy/national-program/2023-2028-proposed-program. For estimates of greenhouse gas emissions related to oil and gas leasing on federal lands and waters, see U.S. Geological Survey, *Federal Lands Greenhouse Gas Emissions and Sequestration in the United States: Estimates for 2005-14*, Report 2018-5131, November 2018, at https://pubs.er.usgs.gov/publication/sir20185131.

[65] Office of the Secretary of Defense, *Preserving Military Readiness in the Eastern Gulf of Mexico*, May 2018, at http://www.iadc.org/wp-content/uploads/2018/05/DOD-Offshore-Report.pdf (hereinafter cited as DOD 2018 Report).

[66] In 2017, DOD wrote that the agency "cannot overstate the vital importance of maintaining this moratorium.... Emerging technologies such as hypersonics, autonomous systems, and advanced sub-surface systems will require enlarged testing and training footprints, and increased DoD reliance on the Gulf of Mexico Energy Security Act's moratorium beyond 2022" (letter from A. M. Kurta, Performing the Duties of the Under Secretary of Defense for Personnel and Readiness, to Representative Matt Gaetz, April 26, 2017). Also see letter from Donald R. Schregardus, Deputy Assistant Secretary of the Navy, to Minerals Management Service, April 10, 2006.

[67] DOD 2018 Report. For one interpretation, see the dissenting views in H.Rept. 116-156, referring to the wording in the DOD report: "This conditional statement conveys that, with DoI and industry cooperation, multiple uses of the Eastern Gulf of Mexico are possible, including energy development."

[68] For more information, see CRS Report R46970, *Offshore Wind Energy: Federal Leasing, Permitting, Deployment, and Revenues*, by Laura B. Comay and Corrie E. Clark.

[69] BOEM, "Gulf of Mexico Activities," at https://www.boem.gov/renewable-energy/state-activities/gulf-mexico-activities. One identified wind energy area is off the coast of Galveston, TX, and the other is off the coast of Lake Charles, LA. A 2020 study by BOEM and the Department of Energy's National Renewable Energy Laboratory (NREL) generally identified areas farther west in the Gulf of Mexico as having higher potential for offshore wind to "compete ... without additional subsidies," while still noting some opportunities for development in the Eastern Gulf. BOEM and NREL, *Offshore Wind in the US Gulf of Mexico: Regional Economic Modeling and Site-Specific Analyses*, February 2020, p. xii, at https://tethys.pnnl.gov/sites/default/files/publications/BOEM_2020-018.pdf.

[70] P.L. 117-169, §50251.