# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | |
|---|---|
| STATE OF TEXAS, by and through its Attorney General, Ken Paxton; and W&T OFFSHORE, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, <br><br> *Defendant*. | Civil Action No. 9:25-cv-10 |

## PLAINTIFFS' OPPOSITION TO
## APPLICANT-INTERVENOR-DEFENDANTS' MOTION TO INTERVENE

The present case questions the President's legal authority through Section 208 of Executive Order 14008 to order a "stop" on oil and gas activities in light of the Outer Continental Shelf Lands Act (OCSLA) and the Mineral Leasing Act (MLA).

A group of nonprofit organizations ("Conservation Groups")[1] has moved to intervene in the lawsuit as defendants, advocating for the cessation of oil and gas leases on allegations of climate change and potential damage to the gulf coast. *See* Conservation Groups' [Proposed] Answer in Intervention, ECF No. 8-1. All but one of the Conservation Groups previously attempted to intervene in a Western District of Louisiana matter to litigate the same issues on substantially similar grounds and were denied intervention. *Louisiana v. Biden*, 338 F.R.D. 219, 224-225 (W.D. La. 2021).

Likewise, the Court should deny the Conservation Groups Motion to Intervene because Defendant—a governmental party charged with enforcing the Act and representing the public's interests—will adequately represent the nonprofits' interests in the proceedings. Applicants and Defendant desire the same result in this case – denial of the relief Plaintiffs seek. Furthermore, the

---

[1] Friends of the Earth, Healthy Gulf, Oceana, and Turtle Island Restoration Network. *See* Conservation Groups' [Proposed] Answer in Intervention, ECF No. 8-1.

Conservation Groups' policy goals are simply irrelevant to the only real question for this Court to decide – which is not whether the "stop" on oil and gas leases is desirable, but whether the permanent nature of the President's action was authorized by the relevant laws. The proposed intervention would therefore add new and far-reaching claims that are unnecessary for the determination of the case. Intervention would also unduly burden the Court and the parties. Rather than intervening and disrupting the case, Conservation Groups can present their views, if at all, as amicus curiae.

## BACKGROUND

This lawsuit was originally filed by the State of Texas on January 20, 2025. Defendant answered on March 31, 2025. On April 25, 2025, the Parties agreed to vacate deadlines in the case because of an anticipated ruling from the 5th Circuit in the above-referenced case out of Louisiana.

The Conservation Groups have moved to intervene, alleging an interest in the lawsuit by making conclusory allegations (by persons not shown to be qualified to offer opinion testimony) on oil and gas exploration affecting climate change,[2] marine biodiversity,[3] greenhouse gas emissions,[4] extreme weather events,[5] and rising seas and storms.[6] As shown below, this claimed interest by the proposed Intervenors is outside the scope of the questions raised by the litigation and would unnecessarily add consume this Court's and the Parties' resources. The Motion to Intervene should be denied.

## STANDARD OF REVIEW

**A.   Intervention of Right**

Federal Rule of Civil Procedure 24(a) states:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

---

[2] Decl. of Hallie Templeton at1, 3 (ECF No. 8-26).
[3] *Id*. at 2.
[4] Decl. of Beth Ann Niemiec at3 (ECF No. 8-28).
[5] *Id*. at 5.
[6] Decl. of Martha Collins at4 (ECF No. 8-27).

2

> 1) is given an unconditional right to intervene by federal statute: or
>
> 2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

To obtain intervention as of right, an intervenor must satisfy a four prong test: (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. All four of these requirements must be met to be allowed intervention of right. *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 1996).   The movant bears the burden of establishing its right to intervene; federal courts should allow intervention when no one would be hurt, and the greater justice could be attained. *See, e.g.*, *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage*, 834 F.3d 562 (5th Cir. 2016). Although the applicant for intervention's burden is "minimal," it cannot be treated as so minimal as to write the requirement completely out of the rule. *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). Further, "[a]lthough the burden to show inadequate representation is generally "minimal," [the 8th Circuit] has recognized that the applicant for intervention bears a heavier burden on this factor when a party in the suit has an obligation to represent the interests of the party seeking to intervene." *Swinton v. Squaretrade, Inc.*, 960 F.3d 1001, 1005 (8th Cir. 2020) (citing *United States v. Union Elec. Co.*, 64 F.3d 1152, 1168 (8th Cir. 1995)); *Kneeland v. National Collegiate Athletic Association*, 806 F.2d 1285, 1288 (5th Cir. 1987) (presumption that a party adequately represents prospective intervenors' interest when sharing the same ultimate objective in the case); *see also* Fed. R. Civ. P. 23(a)(4).

This is especially true in cases in which a government agency or official is a party; even though a party seeking intervention may have different "ultimate motivation[s]" from the governmental official, where its objectives are the same, it is presumed that representation is

adequate. *Texas*, 805 F.3d at 661-62 (presumption that representation is adequate "when the putative representative is a governmental body or officer charged by law with representing the interests of the [prospective intervenor]") (quoting *Edwards*, 78 F.3d at 1005)); *Tri-State Generation & Transmission Association v. N.M. Pub. Regulation Commission*, 787 F.3d 1068, 1072-73 (10th Cir. 2015) (quoting *City of Stillwell v. Ozark Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996)). Further, when governmental parties are already involved, not only do the proposed intervenors have to overcome the presumption of adequate representation, but "a greater showing that representation is inadequate should be required." *See, e.g.*, *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984); *see also Staley v. Harris Cnty.*, 160 F. App'x 410, 413 (5th Cir. 2005) (noting that prospective intervenor and defendant mutually sought the ultimate objective of maintaining an existing display of a Bible at a courthouse).

**B.    Permissive Intervention**

Federal Rule of Civil Procedure, Rule 24(b) states:

(b) Permissive Intervention

(1) In General. On timely motion, the court may permit anyone to intervene who:
(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

Although district courts have broad discretion in allowing intervention, *Trans Chemical Ltd. V. China National Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 824 (5th Cir. 2003),, a request for permissive intervention may be denied when an existing party adequately represents the proposed intervenors. *Hopwood v. State of Texas*, 21 F.3d 603, 606 (5th Cir. 1994).[7]

Courts are admonished to be prudent in exercising this power, and "[w]hen considering a motion for permissive intervention, a court must examine whether intervention will prejudice the parties to the action or cause undue delay." *Hoblock v. Albany Cnty. Bd. of Elections*, 233 F.R.D. 95,

---

[7] The State is "presumed to represent the interests of its citizens ... when it is acting in the lawsuit as a sovereign." *United States v. New York*, 820 F.2d 554, 558 (2d Cir.1987).

98 (N.D.N.Y. 2005) (cleaned up). The courts also consider "the nature and extent of the intervenors['] interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Sw. Payroll Serv., Inc. v. Pioneer Bancorp, Inc.*, No. 1:19-CV-01349, 2020 WL 12675945, at *7 (N.D.N.Y. Aug. 4, 2020), *report and recommendation adopted*, No. 1:19-CV-1349, 2021 WL 4583643 (N.D.N.Y. Oct. 6, 2021); *Hopwood*, 21 F.3d at 606. Ultimately, "[t]he district court has broad discretion to deny an applicant's motion for intervention under Rule 24(b)(2)." *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 487 (2d Cir. 1992).

## ARGUMENT AND AUTHORITIES

The Court should deny Conservation Groups' motion to intervene for three reasons. First, Defendant adequately represents the applicants' interests in defense of the OCSLA and MLA. Second, intervention would cause undue delay and prejudice to these proceedings. And third, applicants can readily articulate their views and protect their purported interests as amici curiae.

### A. The Court Should Deny Applicants' Motion to Intervene Because Defendant Adequately Represents their Interests in this Matter

Assuming arguendo that Conservation Groups could meet the other requirements of Rule 24, the Motion to Intervene must be denied on the basis that the President adequately represents the public on the actual legal question at issue in this case: whether the President had the legal authority to order a permanent cessation of all oil and gas leasing in the Outer Continental Shelf of the Gulf. As the above-referenced Louisiana Western District Court found, in relation to the same claimants attempting to intervene on the same issue:

> [T]he Government Defendants and Conservation Groups have the "same ultimate objective" and Conservation Groups have not overcome the presumption of adequacy. Despite Conservation Groups" different objectives, this lawsuit is not about implementing an approach to oil and gas development on federal lands and waters that is sufficiently protective of the climate, environment, or public health. This case is also not about whether to permanently end new leasing of federal land and waters.

> This case is about whether the Government Defendants had the constitutional and/or statutory authority to pause new oil and gas leases on public lands or in offshore waters pending completion of a comprehensive review and reconsideration. Only Section 208 of Executive Order No. 14008 is being attacked. Other parts of Executive Order No. 140084 are not at issue. There can only be one "same ultimate objective."

*Louisiana*, 33 F.R.D. at 224-25.

In determining whether an intervention is proper, "there can only be one 'same ultimate objective.'" *Id.* at 225. Additionally, the "same ultimate objective" must be specific to the lawsuit at issue. *Kneeland v. National Collegiate Athletic Association*, 806 F.2d 1285, 1288 (5th Cir. 1987). This specific lawsuit is about constitutional and statutory authority, not about climate policy or climate change. On that topic, the proposed intervenors have wholly failed to show that the current parties do not adequately represent any interested parties. The Court can deny the Motion to Intervene on this basis alone. *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019) (a prospective intervenor's failure to carry its burden to demonstrate inadequate representation precludes intervention as of right); *see Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014).

By seeking to intervene in this case, the Applicants hope to achieve what they could not achieve in the Western District of Louisiana. *See Louisiana*, 33 F.R.D. 219. There, Applicants'[8] ultimate objective was to preserve the Executive Order that was challenged by Louisiana; *see id*. There, Applicants argued that they had different objectives than the President, asserting the same policy goals they describe as their ultimate objectives in this case. *See Louisiana*, 33 F.R.D. 219, 223 (noting that Conservation Groups sought the implementation of climate, environment, and public health policies). And there, the Court denied intervention of right and permissive intervention, finding that Conservation Groups could not rebut the presumption of adequate representation by demonstrating defendant's collusion or malfeasance or an adversity of interest with the defendant. *Id.* at 224.

---

[8] Applicant Turtle Island Restoration Network did not seek intervention in *Louisiana*, but makes identical arguments in this case as prospective intervenors did in *Louisiana*.

Texas challenges the same Executive Order in this case as was at issue in *Louisiana*. *See* 33 F.R.D. 219. Just as they argued in *Louisiana*, Applicants advocate for climate policy positions not at issue in this case. And as was the situation in *Louisiana*, Applicants shared the same ultimate objective in the litigation as Defendant, and cannot demonstrate Defendant's collusion, malfeasance, or adversity of interest. *Id*. This Court should deny Conservation Groups a second bite at the same apple by denying intervention here.

**B.     The Court Should Deny Applicants' Motion to Intervene because Intervention Would Cause Undue Delay, Impose Unnecessary Costs, and Prejudice Plaintiffs**

Additionally, intervention would delay these proceedings and prejudice Texas. Additionally, the Conservation Groups seek to litigate matters that are not at issue in this case – making wide-ranging allegations regarding climate, greenhouse gases, and weather. Their objectives include implementing an approach to oil and gas leasing that would protect the environment, climate, and public health and/or for permanently ending new oil and gas leasing of federally-controlled waters. To allow Conservation Groups to intervene would expand the case to issues that are irrelevant. *Louisiana v. Biden,* 33 F.R.D. at 225.

Applicants want to present to this Court public policy arguments that are better presented to a legislative body under the guise of a claimed interest in the litigation. *See*, *e.g.*, *Midwest Dental Prods. Corp. v. Kinetic Instruments Inc.*, No. 89 C 7289, 1990 WL 488675, at *4 (N.D. Ill. Jan. 24, 1990) (noting how an interest "in advancing public policy goals" is insufficient to justify intervention). The proposed intervention will unduly delay these proceedings while distracting from the pure legal issues in this case. There is no justification to multiply the issues and add layers of legal complexity to an otherwise straightforward legal determination.

**C.     Applicants Can Present Their Views as Amici Curiae**

Finally, intervention is unnecessary here because Conservation Groups can present their views as amicus curiae without disrupting the Court's schedule. Courts regularly deny permissive intervention when amicus participation suffices, especially when intervention would cause undue delay or serve no unique purpose. *See Mumford Cove Ass'n, Inc. v. Town of Groton*, 786 F.2d 530,

535 (2d Cir. 1986) (finding that allowing a proposed intervenor to file an amicus brief is an adequate alternative to permissive intervention); *see also, e.g.*, *Sweet Home Chapter of Communities For a Great Or. v. Lujan*, No. CIV. A. 91-1468, 1991 WL 277331, at *4 (D.D.C. Dec. 10, 1991) (denying motion to intervene by environmental groups where "[i]ntervenors' extensive familiarity with the issues involved and the likelihood that their participation in this lawsuit would contribute a useful perspective argue in favor of granting intervention" but their "input may also be adequately received through the timely filing of amicus briefs"). This alternative preserves judicial efficiency, allows the proposed intervenors to fully express their positions on the relevant legal issues, and avoids prejudicing Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should deny Applicants' Motion to Intervene.

Dated: May 12, 2025.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

Respectfully submitted,

*/s/ Ryan Kercher*
**RYAN G. KERCHER**
Chief, Special Litigation Division
Texas State Bar No. 24060998

**WESLEY S. WILLIAMS**
(Application Pending)
Assistant Attorney General
Texas State Bar No. 24108009

**ZACHARY BERG**
Special Counsel
Texas State Bar No. 24107706

**GARRETT GREENE**
Special Counsel
Texas State Bar No. 24096217

Ryan.Kercher@oag.texas.gov
Wesley.Williams@oag.texas.gov
Zachary.Berg@oag.texas.gov
Garrett.Greene@oag.texas.gov

**COUNSEL FOR THE STATE OF TEXAS**

**GEORGE J. HITTNER**
Executive Vice President and General Counsel
Texas State Bar No. 24038959

**RALPH E. IMPERATO**
Vice President and Deputy General Counsel
Tex. State Bar No. 24038112

W&T OFFSHORE, INC.
5718 Westheimer Rd, Ste. 700
Houston, Texas 77057
(713) 626-8525
ghittner@wtoffshore.com
timperato@wtoffshore.com

9

and

YASSER A. MADRIZ
Texas State Bar No. 24037015
McGuireWoods LLP
845 Texas Ave., Suite 2400
Houston, Texas 77002
(832) 255-6361
ymadriz@mcguirewoods.com

**COUNSEL FOR W&T OFFSHORE, INC.**

**CERTIFICATE OF SERVICE**

    I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 12, 2025 and that all counsel of record were served by CM/ECF.

    */s/ Ryan Kercher*
    **RYAN G. KERCHER**