# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br><br>    Defendant,<br><br>and<br><br>FRIENDS OF THE EARTH, *et al.*,<br><br>    Intervenor-Defendants. | No. 9:25-cv-10-MJT<br><br>**DEFENDANT'S RESPONSE TO INTERVENOR-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

Just before leaving office, President Biden issued two memoranda purporting to permanently withdraw vast areas of the outer continental shelf ("OCS") from potential oil and gas leasing. Two weeks later, Plaintiffs Texas and W&T Offshore, Inc., sued President Biden—alone—to challenge those withdrawals. Shortly after taking office, President Trump rescinded those same withdrawals. Intervenor-Defendants Friends of the Earth, Healthy Gulf, Oceana, and Turtle Island Restoration Network ("Environmental Groups") moved for judgment on the pleadings, arguing that President Trump's rescission of the challenged withdrawals moots this case, that Texas lacks standing, and that this Court lacks jurisdiction to enjoin the President.[1] On this last point, the Environmental Groups are right: "With regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief." *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010).

## BACKGROUND

On January 6, 2025, then-President Biden issued two memoranda withdrawing certain areas of the OCS from potential oil and gas leasing. The first sought to permanently withdraw areas of the OCS off the coast of Alaska. *See* Withdrawal of Certain Areas of the United States OCS from Oil or Natural Gas Leasing, 90 Fed. Reg. 6739 (Jan. 6, 2025). The second sought to permanently withdrew areas off the East Coast, West Coast, and within the Gulf of America. *See* Withdrawal of Certain Areas of the United States OCS from Oil and Natural Gas Leasing, 90 Fed. Reg. 6743 (Jan. 6, 2025). Two weeks later, Plaintiffs sued to challenge the second withdrawal,

---

[1] While Defendant believes this case should not proceed given that injunctive relief is not appropriate against the President, with regard to Intervenors' argument as to mootness, Defendants in the related *Louisiana v. Biden* case argued that the matter of the withdrawals was capable of repetition but evading review, and thus the case was not moot. The court agreed. *See* Mem. Ruling at 5-6, *Louisiana v. Biden*, No. 2:25-cv-71-JDC-TPL (W.D. La.) (May 30, 2025), Dkt. No. 43.

1

alleging that the withdrawal was unlawful because it exceeded the President's authority under section 12(a) of the Outer Continental Shelf Lands Act ("OCSLA"). *See* Compl. Dkt. No. 1.[2]

Shortly after taking office, President Trump issued an executive order rescinding President Biden's withdrawals. *See* Exec. Order No. 14148 § 2(vvv), (www), Initial Rescissions of Harmful Executive Orders and Actions, 90 Fed. Reg. 8237, 8240 (Jan. 20, 2025) ("2025 Order"). A month later, a coalition of environmental groups, including three of the Intervenor-Defendants here, sued in the District of Alaska challenging President Trump's rescission of President Biden's withdrawals. *See* Compl., *N. Alaska Envtl. Ctr. v. Trump*, No. 3:25-cv-38 (D. Alaska Feb. 19, 2025), Dkt. No. 1 ("*NAEC* Compl."). The Alaska plaintiffs allege that President Trump's rescission of President Biden's withdrawals was unlawful because, in their view, section 12(a) of OCSLA allows a president to withdraw areas of the OCS, but not to modify or rescind previously withdrawn areas. *See id.* ¶¶ 77-88. They are asking that court to declare President Trump's rescission of the withdrawals to be invalid and to enjoin the Secretary of the Interior and the Secretary of Commerce from enforcing the rescission. *See id.* at 42-43 (Prayer for Relief).

Many of the same environmental groups were also involved in an earlier Alaska case—initiated during President Trump's first term—challenging an executive order by President Trump reversing an earlier withdrawal by President Obama. *See* Exec. Order No. 13795, Implementing an America-First Offshore Energy Strategy, 82 Fed. Reg. 20,815 (Apr. 28, 2017) ("2017 Order"). On summary judgment, the court held that President Trump lacked authority under section 12(a)

---

[2] A parallel case challenging both withdrawals was brought by Louisiana, several other states, the American Petroleum Institute, and the Gulf Energy Alliance in the Western District of Louisiana. *See* Compl., *Louisiana v. Trump*, No. 2:25-cv-71 (W.D. La. Jan. 17, 2025), Dkt. No. 1. The court in that case recently granted summary judgment to the plaintiffs on their claim that President Biden's withdrawals exceeded his authority under section 12(a) of OCSLA insofar as they were issued "for a time period without specific expiration." *See* Mem. Ruling at 15, *Louisiana v. Trump*, No. 2:25-cv-71 (W.D. La. Jan. 17, 2025), Dkt. No. 71 ("*Louisiana* Mem. Ruling").

2

of OCSLA, 43 U.S.C. § 1341(a), to reverse President Obama's withdrawal of areas on the OCS, and it vacated the relevant portion of the 2017 Order. *See League of Conservation Voters v. Trump*, 363 F. Supp. 3d 1013, 1030-31 (D. Alaska 2019), *vacated as moot and remanded sub nom. League of Conservation Voters v. Biden*, 843 F. App'x 937 (9th Cir. 2021). On appeal, the district court's order was vacated as moot following President Biden's issuance of an executive order rescinding the 2017 Order. *See* Exec. Order No. 13990, Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, 86 Fed. Reg. 7037 (Jan. 20, 2021); *see also* Order of Dismissal, *League of Conservation Voters v. Trump*, No. 17-cv-101-SLG (Alaska Apr. 16, 2021), Dkt. No. 96.

President Trump's 2025 Order also rescinded other actions by President Biden to enact or reinstate OCS withdrawals, including Executive Order No. 13990. *See* Exec. Order No. 14148 §§ 2(f), (ccc). By rescinding Executive Order No. 13990, the 2025 Order again reversed the OCS withdrawals at issue in the *League of Conservation Voters* case. *See id.* § 2(f).[3] Plaintiffs in the earlier Alaska case filed a Rule 60(b) motion asking the court to reinstate its prior summary judgment order. *See* Pls.' Rule 60(b)(6) Motion, *League of Conservation Voters v. Trump*, No. 3:17-cv-101-SLG, Dkt. No. 99 (D. Alaska Feb. 19, 2025). Federal Defendants and Defendant-Intervenors opposed that motion. *See League of Conservation Voters*, Dkt. Nos. 110, 111 & 112. The court recently denied that motion on the basis that it was bound by the prior Ninth Circuit mandate. *See* Order on Pls.' Rule 60(b) Mot, *League of Conservation Voters v. Trump*, No. 3:17-

---

[3] Some areas of the OCS off of Alaska, in the Atlantic Ocean, and in the Gulf of America remain withdrawn based on a December 16, 2014 memorandum issued by President Obama and two memoranda issued by President Trump in September 2020. *See* Areas Under Restriction, Bureau of Ocean Energy Management, https://www.boem.gov/oil-gas-energy/leasing/areas-under-restriction (last visited Apr. 28, 2025). The area of the Gulf of America that remains withdrawn is the same as the area of the Gulf identified in President Biden's January 6, 2025 Memorandum. *See* 90 Fed. Reg. at 6743-45.

3

cv-101-SLG, Dkt. No. 99 (D. Alaska Aug. 18, 2025). The Alaska plaintiffs have now sought to pursue those same claims in the more recent Alaska lawsuit. *See* Mem. in Supp. of Pls.' Unopposed Mot. for Leave to File Sec. Am. Compl., *N. Alaska Envtl. Ctr.*, No. 3:25-cv-38-SLG, Dkt. No. 50-1 (D. Alaska Sept. 24, 2025).

## LEGAL STANDARD

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation marks omitted). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.*. If jurisdictional issues are raised in a Rule 12(c) motion, a court will treat the motion as one filed under Rule 12(b)(1). *See Jehle v. PSC Group LLC*, Civ. A. No. 22-3836, 2023 WL 3377142, at *1 (E.D. La. May 11, 2023). On a Rule 12(b) motion, the party asserting jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## ARGUMENT

**I.     This Court May Not Enjoin the President.**

As Intervenor-Defendant argues, *see* Int.-Defs.' Mot. for Judgment on the Pleadings at 22-23, Dkt. No. 26, this Court may not issue injunctive relief against the President. Out of proper respect for the separation of powers, courts generally decline to issue injunctive relief against the President. *See Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) ("While injunctive relief against executive officials like the Secretary of Commerce is within the courts' power, the District

Court's grant of injunctive relief against the President himself is extraordinary and should have raised judicial eyebrows.") (citation omitted); *see also Newdow*, 603 F.3d at 1013 ("With regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief." (citations omitted)); *Swan v. Clinton*, 100 F.3d 973, 976 n.1, 977 (D.C. Cir. 1996) (Courts lack jurisdiction "to enjoin the President in the performance of his official duties.") (quoting *Franklin*, 505 U.S. at 802-03)); *Missouri v. Biden*, 662 F. Supp. 3d 626, 682 (W.D. La. 2023) ("[T]he Court agrees with Defendants that injunctive relief against President Biden is not proper here.").

     There is no basis to depart from that general rule here.  Plaintiffs have not alleged that President Biden's withdrawals involved a "purely 'ministerial' duty,'" *see Franklin*, 505 U.S. at 802, where a court may be able to issue injunctive relief.  Rather, Plaintiffs allege that President Biden's decision to *permanently* withdraw lands from the OCS for potential oil and gas leasing exceeds the discretionary authority granted to the President under section 12(a) of OCSLA.  *See* Compl. ¶¶ 22-34.  Nor have they sought injunctive relief against a subordinate official responsible for enforcing or implementing the President's order.  *See id.* at 828-29 (Scalia, J., concurring in part) ("Review of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin officers who attempt to enforce the President's directive[.]"); *see also Swan*, 100 F.3d at 978 (observing that any "conflict between the desire to avoid confronting the elected head of a coequal branch of government and to ensure the rule of law can be successfully bypassed, because the injury at issue can be rectified by injunctive relief against subordinate officials").  Therefore, the Court should not order injunctive relief against President Trump in this case.

## CONCLUSION

For the reasons above, this Court should hold that it cannot grant Plaintiffs' requested injunctive relief against the President, regardless of how it resolves Intervenor-Defendants arguments regarding mootness and standing.

Respectfully submitted this 25th day of November 2025.

        ADAM R.F. GUSTAFSON
        Acting Assistant Attorney General
        Environment & Natural Resources Division
        United States Department of Justice

        */s/ Luther L. Hajek*
        LUTHER L. HAJEK (CO Bar # 44303)
        Trial Attorney
        United States Department of Justice
        Environment and Natural Resources Division
        999 18th Street
        North Terrace, Suite 600
        Denver, CO 80202
        Tel: (303) 241-0826 / Fax: (303) 844-1350
        luke.hajek@usdoj.gov

        *Counsel for Defendant*