# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | |
|---|---|
| STATE OF TEXAS, by and through its Attorney General, Ken Paxton; and W&T OFFSHORE, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, <br><br> *Defendant*. | CIVIL ACTION NO. 9:25-cv-10 |

**PLAINTIFFS' RESPONSE TO INTERVENOR-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................................... iii

I.   Introduction ........................................................................................................................... 1

II.  Argument and Authorities ..................................................................................................... 3

    A.   Standards ........................................................................................................................ 3

    B.   There is a Case and Controversy: the Case is not Moot ................................................ 4

        1.   Plaintiff's Injuries Will Be Redressed by a Favorable Decision; the Case is not Moot ... 5

        2.   Recission and Re-Enactment Show the Case is Not Moot ............................................ 6

        3.   Alaska Case Shows Matter is Not Moot ....................................................................... 7

        4.   The Matter is Ripe ......................................................................................................... 8

    C.   Texas Has Standing ........................................................................................................ 9

        1.   Texas Has Shown Loss of Revenue, Jobs, and Infrastructure ....................................... 9

        2.   Texas Has Standing for Lack of Consultation Under OCSLA ..................................... 10

    D.   The Court has the Authority to Enjoin the Enforcement of Executive Orders ............. 10

III. Conclusion and Prayer ......................................................................................................... 11

Certificate of Service .................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Center for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
  704 F.3d 413 (5th Cir. 2013)............................................................................................. 5

*City of Mesquite v. Aladdin's Castle*,
  455 U.S. 283 (1982) .................................................................................................... 4, 7

*Envtl. Conservation Org. v. City of Dallas*,
  529 F.3d 519 (5th Cir. 2008) ......................................................................................... 4

*FBI v. Fikre*,
  601 U.S. 234 (2024)....................................................................................................... 4

*Freedom from Religion Found. v. Abbott*,
  58 F.4th 824 (5th Cir. 2023) .......................................................................................... 6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S.167 (2000) .................................................................................................... 5, 9

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ......................................................................................... 4

*Johnson v. Johnson*,
  385 F.3d 503 (5th Cir. 2004) ......................................................................................... 4

*Louisiana v. Biden*,
  No. 2:24-CV-00406, 2024 U.S. Dist. LEXIS 115999 (W.D. La. July 1, 2024) ............ 1

*Louisiana v. Biden*,
  No. 2:25-CV-00071, 2025 U.S. Dist. LEXIS 103457 (W.D. La. 2025) ....................... 7

*Louisiana v. Biden*,
  No. 2:25-CV-00071, 2025 U.S. Dist. LEXIS 195905 (W.D. La. 2025) ................. 7, 10

*Morehouse v. Jackson*,
  614 F. Appx. 159 (5th Cir. 2015).................................................................................. 4

*Nat'l Black Police Ass'n v. Dist. of Columbia*,
  108 F.3d 346 (D.C. Cir. 1997) ...................................................................................... 6

*Nat'l Infusion Ctr. Ass'n v. Becerra*,
  116 F.4th 488 (5th Cir. 2024)...................................................................................... 10

*Ohio v. United States EPA*,
  969 F.3d 306 (6th Cir. 2020)..................................................................................... 7, 8

*Ozinga v. Price*,
  855 F.3d 730 (7th Cir. 2017)......................................................................................... 7

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
  461 U.S. 190 (1983) ...................................................................................................... 8

*Sossamon v. Lone Star State of Texas*,
   560 F.3d 316 (5th Cir. 2009) ........................................................................................ 6

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*,
   989 F.3d 368 (5th Cir. 2021) ...................................................................................... 10

*Trump v. CASA, Inc.*,
   606 U.S. 831, 837 (2025) ............................................................................................ 10

*United States Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ...................................................................................................... 4

*United States v. Concentrated Phosphate Export Ass'n*,
   455 U.S. 283 (1968) ...................................................................................................... 6

**Statutes**

28 U.S.C. § 2201 ................................................................................................................ 10

U.S.C. § 2202 .................................................................................................................... 10

**Rules & Regulations**

Fed. R. Civ. P. 12(c) ........................................................................................................... 3

**Other Authorities**

2024 Annual Energy & Economic Impact Report, Tex. Oil & Gas Ass'n (Jan. 7, 2025)
   https://tinyurl.com/us3caha6 ..................................................................................... 9

Cong. Rsch. Serv., IF11909, *Offshore Oil and Gas: Leasing "Pause"*, *Federal Leasing Review*
   (Apr. 29, 2022) .............................................................................................................. 1

Gulf of Mexico Energy Security Act of 2006, Pub. L. No. 109-432, 120 Stat. 3000 .................... 10

Gulf of Mexico Energy Security Act, *U.S. Dep't of the Interior Natural Resources Revenue Data,* https://tinyurl.com/mvktux52 ................................................................... 9

Initial Rescissions of Harmful Executive Orders and Actions, 90 Fed. Reg. 8237 (Jan. 20, 2025) .................................................................................................................................. 2

Memorandum on the Withdrawal of Certain Areas of the United States Outer Continental Shelf from Oil or Natural Gas Leasing (Gulf of Mexico, Atlantic, and Pacific areas) (Jan. 6, 2025) ............................................................................................ 1

Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/pause ................... 1

*Texas Revenue Data, U.S. Dep't of the Interior Natural Resources Revenue Data,*
   https://tinyurl.com/txv626sm ....................................................................................... 9

## I.  INTRODUCTION

On January 27, 2021, President Joseph R. Biden, Jr. ("President Biden") signed Executive Order 14008 (Jan. 27, 2021), pausing "new oil and natural gas leases on public lands and offshore waters." Section 208 of Executive Order 14008 "to the extent consistent with applicable law," ordered the Secretary of the Department of the Interior to "pause" new oil and gas leases on public lands or in offshore waters pending the completion of a comprehensive review of Federal oil and gas permitting and leasing practices. In response, agencies in the Department of the Interior ("Interior") stopped issuing new onshore and offshore oil and gas leases. Cong. Rsch. Serv., IF11909, *Offshore Oil and Gas: Leasing "Pause", Federal Leasing Review* (Apr. 29, 2022); s*ee State v. Biden*, 622 F. Supp. 3d 267, 283 (W.D. La. 2025).

On January 6, 2025—two weeks before leaving office—President Biden permanently withdrew areas of the United States Outer Continental Shelf ("OCS") located in the Atlantic Ocean, Gulf of Mexico, and Pacific Ocean. *See* Memorandum on the Withdrawal of Certain Areas of the United States Outer Continental Shelf from Oil or Natural Gas Leasing (Gulf of Mexico, Atlantic, and Pacific areas) (Jan. 6, 2025) (attached hereto as Exhibit 1). Relevant to this action, President Biden withdrew large portions of the eastern Gulf of Mexico from consideration for oil and gas development indefinitely.

Courts throughout the Gulf region have consistently held these actions as unlawful. *See*, *e.g.*, *State v. Biden*, 622 F. Supp. 3d 267) (permanently enjoining implementation of 2021 pause of new oil and gas leases); *Louisiana v. Biden*, No. 2:24-CV-00406, 2024 U.S. Dist. LEXIS 115999 (W.D. La. July 1, 2024) (preliminarily enjoining LNG export ban). This Memorandum's assertion of sweeping and permanent withdrawal authority followed on the heels of President Biden's earlier attempt to "pause" new oil and natural gas lease in offshore waters."[1]

---

[1] "Pause" is defined as "a temporary stop." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/pause. Even the first "pause" (EO 14008) was found to be not a pause, but a full "stop" because no new leases were awarded for over 19 months after the order. *State v. Biden*, 622 F. Supp. 3d at 283. The initial "pause" was therefore found improper for that reason. *See id.* at 275, 283.

Upon his inauguration, President Trump issued an executive order entitled "Initial Rescissions of Harmful Executive Orders and Actions." Initial Rescissions of Harmful Executive Orders and Actions, 90 Fed. Reg. 8237 (Jan. 20, 2025). Among other things, that order rescinded the Withdrawal Memos and "instruct[ed] all Department Bureaus/Offices to take all actions available to expedite oil and gas leasing on the OCS." *Id.* In response, multiple environmental organizations, including the present Intervenors, took steps to challenge the rescission order and defend the Withdrawal Memos.

A case challenging the same Gulf Coast withdrawal, as well as another withdrawal of areas of the OCS off the coast of Alaska, was brought by the State of Louisiana, several other states, the American Petroleum Institute, and the Gulf Energy Alliance in the Western District of Louisiana. *See* Ex. 2 *Complaint., Louisiana v. Trump*, No. 2:25-cv-71 (W.D. La. Jan. 17, 2025). In addition, several environmental groups, including some of the present Intervenors in this suit, sued in the District of Alaska challenging President Trump's rescission of President Biden's withdrawals. *See* Ex. 3 (Complaint, *N. Alaska Envtl. Ctr. v. Trump*, No. 3:25-cv-38 (D. Alaska Feb. 19, 2025) ("Alaska Complaint").[2]

First, the Intervenors sued President Trump in Alaska on February 19, 2025, seeking to enjoin his rescission of the Withdrawal Memos at issue and thereby reinstate them. *See* Ex. 3.

Intervenors claimed in their Alaska complaint not only that OCSLA gave President Biden the authority to permanently withdraw large areas of OCS land from all future oil and gas development, but that neither the Constitution nor OCSLA grants any president the authority to rescind or reverse such permanent withdrawals. Ex. 3 at ¶¶ 77–88. According to Intervenors, in reversing President Biden's Section 12(a) withdrawals, President Trump "acted in excess of, and

---

[2] The Alaska district court concluded that President Trump lacked authority under § 12(a) of OCSLA to reverse President Obama's withdrawal of areas of the OCS. On appeal, however, the Ninth Circuit vacated the district court's order as moot following President Biden's issuance of an executive order rescinding the 2017 Order. *League of Conservation Voters v. Trump,* 363 F.Supp.3d. 1013, 1030-31 (D. Alaska 2019), vacated as moot and remanded, 843 F. Appx. 937 (9th Cir. 2021). The motion is still pending.

2

wholly without, statutory authority," and "in excess of his authority under Article II of the U.S. Constitution and intruded on Congress's non-delegated exclusive power under the Property Clause." Ex. 3. at ¶¶ 82, 87. They therefore demanded from the Alaskan district court that it invalidate President Trump's rescission—relief that would reinstate the Withdrawal Memos at issue in this case. Ex. 3 at 42–43.

Also on February 19, another group of environmental organizations filed with the same Alaska district court a motion under Federal Rule of Civil Procedure 60(b), seeking to revive an old case. *See League of Conservation Voters v. Trump*, No. 17-cv-101 (D. Alaska Feb. 19, 2025) (LCV Rule 60(b) Motion). In that case, these environmental organizations challenged an earlier rescission by President Trump (during his first term) of a similar permanent OCSLA withdrawal made by President Obama. The district court agreed with the plaintiffs that presidents have no authority to issue such rescissions. *See League of Conservation Voters,* 363 F. Supp. 3d 1013, 1031 (D. Alaska 2019). However, the Ninth Circuit vacated that decision on mootness grounds when President Biden, upon taking office, reinstated President Obama's withdrawals. *See League of Conservation Voters v. Biden*, 843 F. Appx. 937, 938 (9th Cir. 2021).

Despite the above arguments that President Trump had and has no authority to rescind the Executive Orders at issue, the environmental groups who have intervened in this matter now move for judgment on the pleadings, arguing that President Trump's Rescission Order renders plaintiffs' challenge to the Withdrawal Memoranda moot and deprives this court of subject matter jurisdiction.

## II.     ARGUMENT AND AUTHORITIES

### A. Standards

A motion for judgment on the pleadings permits a party to raise the defense of failure to state a claim upon which relief may be granted after the pleadings have closed. Fed. R. Civ. P. 12(c). These motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305,

3

312 (5th Cir. 2002). Such motions are thus decided under the standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *E.g., In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Accordingly, the court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). The motion should only be granted if the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint. *Id.*

### B. There is a Case and Controversy: the Case is not Moot

Article III of the Constitution limits federal jurisdiction to "cases" and "controversies," a case is considered moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome[.]" *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot. *Morehouse v. Jackson*, 614 F. Appx. 159, 162 (5th Cir. 2015) (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)). A case should not be declared moot as long as the parties maintain a "concrete interest in the outcome" and effective relief is available to remedy the effect of the violation. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 527 (5th Cir. 2008). A case only becomes moot if "'there are no longer adverse parties with sufficient legal interests to maintain the litigation' or 'when the parties lack a legally cognizable interest in the outcome' of the litigation." *Id.* (quoting *In re Scruggs*, 392 F.3d 124, 128 (5th Cir. 2004)).

Courts are particularly reluctant to conclude that a case is moot based solely on a defendant's voluntary conduct. Indeed, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982). Rather, a defendant's decision to voluntarily end its challenged conduct will moot a case only if the party asserting mootness "can show that the practice cannot 'reasonably be expected to recur.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024). As the parties asserting mootness, Intervenors bear a "heavy burden" of persuading court that the challenged conduct—here, the purported permanent withdrawals

4

reflected in the Withdrawal Memos—"cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.167, 189 (2000). The Supreme Court has described this burden as both "formidable" and "stringent." *Id.* at 189–90.

1. **Plaintiff's Injuries Will Be Redressed by a Favorable Decision; the Case is not Moot**

A case is not moot if the court at issue remains capable of "providing meaningful relief" to a plaintiff. *Center for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013). Plaintiffs in this suit requested the following relief in its Complaint:

    a. Declare that the Withdrawal Memo is ultra vires.
    b. Enjoin Defendant from enforcing the Withdrawal Memo
    c. Grant all other relief to which Plaintiffs are entitled, including but not limited to attorneys' fees and costs.

Compl. (ECF No. 1) at 16.

Plaintiffs have requested a declaration that the Withdrawal Memos are ultra vires because the president lacks constitutional and statutory authority to permanently withdraw OCS lands from future oil and gas leasing. While President Trump has rescinded the Withdrawal Memos, he has not disavowed the position that a president holds legal authority to issue permanent withdrawals— and thus the Withdrawal Memos would spring back into effect if President Trump's rescission were blocked. That possibility, moreover, is very real. Intervenors argue that the president does have lawful permanent-withdrawal authority but does not have the concomitant authority to "revoke" permanent withdrawals. Based on the same argument, many of the same Intervenors are seeking in the District of Alaska to enjoin as ultra vires President Trump's rescission of the Biden Withdrawal Memos, thereby reinstating the Withdrawal Memos. See Ex. 3 (Alaska Complaint) at 1–3. The fact that Intervenors have litigated the same legal issue both here and in their preferred forum underscores that this case presents a live dispute and that the Court can provide effective relief that ends all litigation over the Withdrawal Memos: a declaration that the president lacks constitutional and/or statutory authority to permanently withdraw vast areas of the OCS. This would be effective relief because (1) it would mean that the purportedly withdrawn OCS areas in

the Withdrawal Memos are, in fact, available for oil and gas development, and (2) it would preclude presidents from attempting to execute similar illegal permanent withdrawals in the future.

### 2. Recission and Re-Enactment Show the Case is Not Moot

Intervenors maintain that mootness is a "default" position when a challenged policy is rescinded. *See generally Freedom from Religion Found. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023). Under the voluntary cessation doctrine, a defendant's voluntary cessation of the challenged conduct ordinarily cannot moot a case unless subsequent events make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009); *see also United States v. Concentrated Phosphate Export Ass'n*, 455 U.S. 283, 289 (1968). But if a new Democratic president is elected, he or she would be expected to place the ban back in place—as shown by the actions of Presidents Obama and Biden. The party's stated environmental and energy goals have not changed. The cases cited by Intervenors dealing with this issue are inapposite, due to the nature of the continued contests surrounding this and other bans regarding energy resource extraction disputes.

Governmental entities are presumed to act in good faith, however, and bear a "lighter burden" in showing that recurrence is unlikely. *Freedom from Religion Found. v. Abbott*, 58 F.4th at 833. Thus, the mere power to reenact a challenged law *alone* is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged law likely will be reenacted." *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997).

This issue was analyzed by the Louisiana Western District Court concerning a similar motion to dismiss filed by the same Intervenors over these same Executive Orders, where the court found that evidence of reenactment existed:

> The challenged conduct was undertaken by a previous administration, concerning an issue that has been the subject of an apparent tug-of-war between administrations for more than a decade. The likelihood that a subsequent administration will attempt to undo the actions of the last one in this arena by executive order or memorandum is high. Indeed, right now some of the same environmental groups who have intervened as defendants in this matter are urging another district court

6

> to vacate the Rescission Order and revert conditions on the OCS to those set by President Biden's challenged Withdrawal Memoranda. The court can grant effective declaratory relief addressing the legality of these actions. Accordingly, the matter is not moot.

*Louisiana v. Biden*, No. 2:25-CV-00071, 2025 U.S. Dist. LEXIS 103457, at *7 (W.D. La. 2025) (footnote omitted).[3]

As discussed above, it is far from certain that the Withdrawal Memos will not be resurrected. The federal government has not disavowed President Biden's authority to issue the Withdrawal Memos in the first place, and there is no formal barrier against their reinstatement akin to the complete abolition of the public exhibit program in Intervenor's cited cases on this topic. Further, litigants in other suits—including some of these same Intervenors—are actively attempting to reinstate the Withdrawal Memos by having President Trump's rescission declared unlawful. See Ex. 3. As the Seventh Circuit noted in *Ozinga*, when there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated, the case is not moot, and the controversy remains live. *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) (citing *City of Mesquite v. Aladdin's Castle,* 455 U.S. at 289, n.11). Because this Court remains fully capable of providing meaningful relief to Plaintiffs by holding that the Withdrawal Memos are unlawful to begin with, this case is not moot.

### 3. Alaska Case Shows Matter is Not Moot

Intervenor's assertion that the Alaska lawsuit does not affect this case, referring to it as merely "pending litigation, somewhere in the court system." This description lacks a great deal. The fact remains that Intervenors are actively litigating a parallel case that seeks to enjoin the rescission itself and thus reinstate the challenged Biden permanent ban. This is in fact more similar to the facts in the *Ohio v. United States EPA* case than any case cited by Intervenors. *Ohio v. United States EPA*, 969 F.3d 306 (6th Cir. 2020). In that case, while a 2015 EPA rule was being challenged, EPA repealed the rule. *Id.* at 308. As that court recognized, that repeal effectively granted the

---

[3] The Louisiana court has since reaffirmed this decision. *Louisiana v. Biden*, 2025 U.S. Dist. LEXIS 195905, *8-9 Louisiana Western District Court, Oct. 2, 2025 (granting summary judgment against the same set of intervenors).

plaintiffs the relief they sought in the litigation, yet the court held that the case was not moot. *Id*. That was because the mootness question was whether there was "a fair prospect that the conduct [i.e., the 2015 rule] will recur in the foreseeable future." *Id*. at 310. That "fair prospect" existed in Ohio given parallel litigation—filed by "the intervenors in this case," seeking an injunction against the repeal of the 2015 rule. *Id*. at 309-310. If the repeal were enjoined, the court explained, "the 2015 Rule might again take effect nationwide." The Plaintiffs in the present litigation are facing the same situation. The case remains live.

Here, as in Ohio, Plaintiffs challenge executive actions (the Withdrawal Memos) that have now been rescinded subsequent executive order. And here, as in Ohio, Intervenors claim mootness in this case while simultaneously demanding that another court enjoin the rescission itself. *See* Ex. 3 (Alaska Complaint).

4. **The Matter is Ripe**

The question of whether a claim is ripe "turns on the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.'" *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). Intervenors make a half-hearted claim that this matter is not ripe and the return of a permanent ban is the equivalent of an "abstract or hypothetical" future. They made the same claims in the Louisianna suit listed above.

But the cases relied on by Intervenors do not apply to this case. We have a number of Intervenors in this supposedly moot case who are separately—and simultaneously—urging another federal court to enjoin the Trump rescission order. Intervenors are actively demanding reinstatement of the Alaska court's decision rejecting such rescission orders (thereby reinstating the Withdrawal Memos) right now. Intervenors' "not ripe" accusation is thus a transparent attempt to keep this Court from deciding a question of law that has repeatedly recurred and is actively being litigated elsewhere right now.

### C. Texas Has Standing

To establish Article III standing, a plaintiff must demonstrate that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 180-81.

**1. Texas Has Shown Loss of Revenue, Jobs, and Infrastructure**

Texas is harmed by the permanent withdrawal of OCS lands in the Gulf of Mexico and has sufficiently plead those harms at length in its Complaint. But, to reiterate the major points, Texas has significant oil and gas refining and production infrastructure, which is the source of many jobs, as well as taxes paid to state and local governments. *See* 2024 Annual Energy & Economic Impact Report, Tex. Oil & Gas Ass'n (Jan. 7, 2025) https://tinyurl.com/us3caha6 (reporting that the oil and natural gas industry paid $27.3 billion in taxes and royalties in 2024).

Furthermore, Texas has significant interests in the federal oil and gas leasing programs within the Gulf of Mexico and receives substantial revenues from oil and gas leasing. GOMESA "created a revenue-sharing model for oil- and gas-producing gulf states" under which Texas "receive[s] a portion of the revenue generated from oil and gas production offshore in the Gulf of Mexico" that are used for costal conservation, restoration, and hurricane protection projects. Gulf of Mexico Energy Security Act (GOMESA), *U.S. Dep't of the Interior Natural Resources Revenue Data* (accessed Jan. 15, 2025) https://tinyurl.com/mvktux52. Since 2009, Texas has received over $535 million in GOMESA payments, receiving over $95.5 million in 2024 alone. *Texas Revenue Data, U.S. Dep't of the Interior Natural Resources Revenue Data* (accessed Jan. 15, 2025) https://tinyurl.com/txv626sm. [4]

As explained in the Complaint, by permanently withdrawing the eastern Gulf of Mexico from consideration for oil and gas development, the Withdrawal Memorandum deprives Texas of millions—if not billions—of dollars of future revenues that would go towards important economic

---

[4] *See* Compl. (ECF No. 1) ¶¶ 19–20.

and environmental projects along its coasts. *See Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 501 (5th Cir. 2024) ("change in revenue is a quintessential economic injury" that provides Article III standing); *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 380 (5th Cir. 2021) ("possibility of reduced sales . . . provides standing to pursue [a] claim");[5] *see also* Gulf of Mexico Energy Security Act ("GOMESA") of 2006, Pub. L. No. 109-432, 120 Stat. 3000. And in combination with the fact that Intervenors seek to enjoin the recission order, in addition to the "tug-of-war between administrations" discussed in *Louisiana v. Biden*, there is considerable hazard that such revenue flows will once again be cut off. *See generally, Louisiana v. Biden*, No. 2:25-CV-00071, 2025 U.S. Dist. LEXIS 195905 (W.D. La. 2025)

### 2. Texas Has Standing for Lack of Consultation Under OCSLA

OCSLA requires the Secretary of the Interior to consult with interested parties, consider relevant facts, and issue a proposed five-year plan for public comment. *Louisiana v. Biden*, 2025 U.S. Dist. LEXIS 195905 at *11. "A procedural right can be asserted 'without meeting all the normal standards for redressability and immediacy.'" *National Infusion Center Ass'n*, 116 F.4th at 503 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992)). Instead, a litigant asserting a procedural right has standing if there is "some possibility" that enforcing the procedural right will prompt the defendant to reconsider the decision. *Id.* (quoting *Massachusetts v. EPA*, 549 U.S. 497, 516, 127 S. Ct. 1438, 167 L. Ed. 2d 248 (2007)) (internal quotation marks omitted).

### D. The Court has the Authority to Enjoin the Enforcement of Executive Orders

Though such analysis is not strictly necessary at this stage, Plaintiffs briefly note that Federal District Courts have the power to enjoin the President's executive orders. It is true that the extent of this power is under greater scrutiny recently. *See generally Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025) (discussing the limitations of universal injunctions). It is nonetheless well understood that federal district courts my still enjoin the enforcement of executive actions to the parties before the court. 28 U.S.C. §§ 2201–2202.

---

[5] *See* Complaint (ECF No. 1) ¶ 21.

10

### III. CONCLUSION AND PRAYER

Plaintiffs therefore request that the Court deny Intervenor-Defendants' Motion for Judgment on the Pleadings.

Date: December 1, 2025

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

Respectfully submitted.

**RYAN G. KERCHER**
Chief, Special Litigation Division
Texas Bar No. 24060998

*/s/ Zachary W. Berg*
**ZACHARY W. BERG**
Special Counsel
Texas Bar No. 24107706

**STEVEN B. LOOMIS**
Special Counsel
Texas Bar No. 00793177

OFFICE OF THE
ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
ryan.kercher@oag.texas.gov
zachary.berg@oag.texas.gov
steven.loomis@oag.texas.gov

COUNSEL FOR THE STATE OF TEXAS

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 1, 2025 and that all counsel of record were served by CM/ECF.

*/s/ Zachary W. Berg*
**ZACHARY W. BERG**