IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, by and through its Attorney General, Ken Paxton, and W&T OFFSHORE, INC., | § | |
| *Plaintiffs,* | § | |
| VS. | § | |
| DONALD J. TRUMP, in his official capacity as President of the United States, | § | CIVIL ACTION NO. 9:25-CV-00010<br>JUDGE MICHAEL J. TRUNCALE |
| *Defendant,* | § | |
| and | § | |
| FRIENDS OF THE EARTH, HEALTHY GULF, OCEANA, TURTLE ISLAND RESTORATION NETWORK, | § | |
| *Intervenor-Defendants.* | § | |

**ORDER GRANTING INTERVENOR-DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is Intervenor-Defendants' Motion for Judgment on the Pleadings (the "Motion"), filed on August 25, 2025. [Dkt. 26]. Pursuant to the Court's granting of an extension of time to respond, the Plaintiffs timely filed their response on December 1, 2025. [Dkt. 32; *see generally* Dkt. 30]. The motion is now ripe for review. *See* E.D. Tex. Loc. Civ. R. 7(f).

For the reasons below, the Court **GRANTS** Intervenor-Defendants' Motion.

## I. BACKGROUND

On January 6, 2025, outgoing President Joe Biden invoked his authority under the Outer Continental Shelf Lands Act (OCSLA) to permanently block new oil and gas leasing in certain

parts of the eastern Gulf of America[1] (the "Biden Withdrawal"). [Dkt. 26 at 3]. The Biden Withdrawal left intact all pre-existing leases in the affected areas of the eastern Gulf, where no new leasing had occurred for forty years due to earlier moratoria. *Id.* at 4. On January 20, 2025, Plaintiffs W&T Offshore, Inc. ("W&T") and the State of Texas ("Texas") filed this action to declare the Biden Withdrawal illegal and enjoin the President from enforcing it. [Dkt. 1]. Plaintiffs claimed that they each stood to suffer substantial monetary damages if the Biden Withdrawal remained in place. *See id.* at 9–10. W&T claims to have spent several million dollars surveying the affected areas in hopes of acquiring a lease thereon. *Id.* at 10. Texas, for its part, claimed that the Biden Withdrawal would deprive it of "millions—if not billions—of dollars of future revenues" and eliminate jobs in its oil-and-gas sector.[2] *Id.*

Mere hours after Plaintiffs filed suit, Defendant Donald J. Trump ("President Trump") replaced Biden as President of the United States. [Dkt. 26 at 3]. Almost immediately upon taking office, President Trump issued an executive order (the "EO") rescinding the Biden Withdrawal. *Id.* at 3. Following the EO's issuance, the Department of the Interior (the "DOI") moved swiftly to reopen the eastern Gulf for oil and gas leasing. [Dkt. 26 at 3–4]. On February 3, 2025, Secretary of the Interior Doug Burgum ("Secretary Burgum") issued his own order directing DOI staff to "take all actions available to expedite the leasing of the [outer continental shelf] for oil and gas exploration and production." [Dkt. 8-25 at 2]. Consistent with Secretary Burgum's order, the DOI formally requested information on a new offshore leasing schedule, which included the eastern Gulf, on April 30, 2025. *See* [Dkt. 26 at 4]. Despite these events, Plaintiffs continue to prosecute

[1] Formerly known as the Gulf of Mexico.

[2] The Biden Withdrawal did not affect any areas in Texas waters. However, Texas would still profit from new leasing in the affected areas through its revenue-sharing arrangement with other Gulf states under the Gulf of Mexico Energy Security Act (GOMESA). [Dkt. 1 at ¶ 20].

this action against President Trump, fearing that he or one of his successors will re-instate the Biden Withdrawal. *See* [Dkt. 32 at 6].

On April 28, 2025, three environmental non-profit entities (collectively, the "Intervenor-Defendants") moved to intervene in the action. [Dkt. 8]. Two of the Intervenor-Defendants were plaintiffs in a related case in the District of Alaska (the "Alaska Litigation"), in which they sought to re-instate the Biden Withdrawal. Complaint for Declaratory and Injunctive Relief, *N. Alaska Env't Ctr. v. Trump*, No. 3:25-cv-38 (D. Alaska Feb. 19, 2025) [Dkt. 1]. The District Court for the District of Alaska dismissed that case for lack of standing. Order of Dismissal, No. 3:25-cv-38 (D. Alaska Aug. 24, 2026) [Dkt. 65]. In the present case, Plaintiffs and President Trump both opposed the Intervenor-Defendants' participation in the case. [Dkt. 10; Dkt. 11]. Ultimately, however, the Court allowed the Intervenor-Defendants to join. [Dkt. 13]. On August 25, 2025, the Intervenor-Defendants moved for judgment on the pleadings, arguing that Texas lacks standing to challenge the Biden Withdrawal, and that President Trump's revocation of the Biden Withdrawal moots the entire case. [Dkt. 26].

## II. LEGAL STANDARD

### A. Judgment on the Pleadings

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Rule 12(c) motions are appropriate when no material facts are disputed and a judgment on the merits can be rendered based on "the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation marks omitted). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.*

Rule 12(c) motions are subject to the same standard as motions to dismiss under Rule 12(b)(6). *Truong v. Bank of Am.*, 717 F.3d 377, 381 (5th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is appropriate only "if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002). The court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A claim will survive if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

## III. DISCUSSION

### A. Article III Standing

Intervenor-Defendants argue that Texas lacks standing because it has failed to plead an injury in fact. The Court agrees.

The doctrine of constitutional standing is an extension of Article III's case-or-controversy requirement. It "assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal citation omitted).

To establish standing under Article III, a plaintiff must demonstrate (1) an injury in fact that is (2) fairly traceable to the defendant's conduct and (3) redressable by a favorable ruling. *Fusilier v. Landry*, 963 F.3d 447, 454 (5th Cir. 2020). An injury in fact must be "suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or

imminent, not conjectural or hypothetical." *Stringer v. Whitley*, 942 F.3d 715, 720–21 (5th Cir. 2019) (internal quotation omitted). "[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury." *Id.* at 720. However, a threatened future injury must be "certainly impending" to qualify as an injury in fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013). "[A]llegations of *possible* future injury are not sufficient." *Id.* at 409 (emphasis in original).

Here, Texas claims standing based on two threatened future injuries that it fears will result from the Biden Withdrawal. *See* [Dkt. 1 at ¶¶ 19–21; Dkt. 32 at 13]. First, Texas claims that, by blocking new leasing and drilling in the eastern Gulf, the Biden Withdrawal will deprive it of future revenues that it would otherwise earn under the Gulf of Mexico Energy Security Act (GOMESA)'s revenue-sharing system. [Dkt. 1 at ¶¶ 19–21; Dkt. 32 at 9–10]. While the Biden Withdrawal does not impact any areas in Texas waters, Texas would earn a portion of any proceeds generated by new drilling in the impacted areas. By permanently blocking new leasing in much of the eastern Gulf, the Biden Withdrawal will supposedly deprive Texas of "millions—if not billions" of dollars in potential revenue. [Dkt. 32 at 9]. Second, Texas claims that the Biden Withdrawal will eliminate jobs in Texas's energy sector. [3] [Dkt. 1 at ¶ 19].

Neither of Texas's asserted injuries qualifies as an injury in fact under Article III. *See Clapper*, 568 U.S. at 409–10; *Stringer*, 942 F.3d at 720–21. First, Texas's potential loss of GOMESA revenues is not a "certainly impending" injury. *See Clapper*, 568 U.S. at 410–13. The areas covered by the Biden Withdrawal have been protected from new drilling for four decades, and will remain protected until at least 2032, independent of the Biden Withdrawal. *See* [Dkt. 1 at

[3] In its response to Intervenor-Plaintiffs' Motion, Texas also half-heartedly attempts to claim a procedural injury under OCSLA. [Dkt. 32 at 10]. However, Texas alleged no such injury in its complaint. Because Texas did not raise a procedural-injury argument in its pleadings, the Court does not decide whether Texas's asserted procedural injury qualifies as an injury in fact.

¶ 16; Dkt. 8-12 at 2]. Because new drilling cannot occur in the covered areas until 2032, the Biden Withdrawal cannot impact Texas's GOMESA revenues until then. *See* [Dkt. 1 at ¶ 16; Dkt. 8-12 at 2]. An injury that will not occur for at least more six years, and may never occur, is not "certainly impending." *See Clapper*, 568 U.S. at 410–13.

Further, Texas's ability to earn revenue from the covered areas after 2032 hinges on President Trump's successors not issuing new moratoria on leasing. *See* [Dkt. 1 at ¶ 16; Dkt. 8-12 at 2]. Because President Trump cannot seek re-election in 2028 due to term limits, a new president will take office before current leasing prohibitions expire. *See* U.S. CONST. AM. XXII; [Dkt. 8-12 at 2]. Using his authority under the OCSLA, the new president could issue a new temporary moratorium on leasing, which would further delay Texas's ability to earn new revenue from drilling in the covered areas. *See* 43 U.S.C. § 1341(a). Successive presidents could do the same, thereby perpetually delaying the Biden Withdrawal's impact. *See id.* Accordingly, the possibility of Texas losing GOMESA revenues due to the Biden Withdrawal is purely "hypothetical and conjectural." *Stringer*, 942 F.3d at 720–21. A hypothetical or conjectural future injury is not an injury in fact sufficient to establish Article III standing. *See id.*

The prospect of Texas losing oil-and-gas-related jobs because of the Biden Withdrawal is equally speculative. Even assuming Texas companies extract or process oil from the eastern Gulf, the Biden Withdrawal will not affect their operations until other active leasing prohibitions expire. *See* [Dkt. 1 at ¶ 16; Dkt. 8-12 at 2]. As already discussed, this would happen no sooner than 2032. *See* [Dkt. 1 at ¶ 16; Dkt. 8-12 at 2]. If future presidents issue new temporary withdrawals, the Biden Withdrawal's effects will be delayed even further, potentially forever. *See generally* 43 U.S.C. § 1341(a). Accordingly, job loss is not a "certainly impending" consequence of the Biden Withdrawal. *See Clapper*, 568 U.S. at 410–13. Like the loss of

GOMESA revenues, it is merely a "hypothetical and conjectural" injury that does not suffice to establish standing. *See Stringer*, 942 F.3d at 720–21.

Because Texas has failed to plead an injury in fact fairly traceable to the Biden Withdrawal, it lacks standing to challenge the Biden Withdrawal's validity.

**B. Mootness**

Even if Texas had standing to challenge the Biden Withdrawal, its and W&T's challenge has been rendered moot by President Trump's EO revoking the Biden Withdrawal.

The concept of mootness, like standing, arises from Article III's cases-and-controversies requirement. Federal courts cannot exercise judicial power over a matter unless an "actual controversy" exists at all stages of litigation. *Herndon v. Upton*, 985 F.3d 443, 446 (5th Cir. 2021). When an actual controversy ceases to exist, due to a change in circumstances or otherwise, the matter becomes "moot." *U.S. v. Vega*, 960 F.3d 669, 672 (5th Cir. 2020). To determine if a case is moot, the court must ask whether it can still grant "any effectual relief whatever" to the plaintiff. *Herndon*, 985 F.3d at 446. If the plaintiff has already "secure[d] outside of litigation all the relief he might have won in it," the litigation is moot. *Crocker v. Austin*, 115 F.4th 660, 667 (5th Cir. 2024).

Plaintiffs contends that the case is not moot because the Court can still grant effectual relief—namely, a judgment declaring the Biden Withdrawal *ultra vires*. [Dkt. 32 at 5]. This contention is incorrect. A judgment passing upon the Biden Withdrawal's validity would be an improper advisory opinion. *See Shemwell v. City of McKinney*, 63 F.4th 480, 484 (5th Cir. 2023). Because the Biden Withdrawal is no longer in force, it is incapable of harming Plaintiffs now or in the future. Accordingly, Plaintiffs no longer have a "cognizable legal interest" in this case, and

a declaratory judgment deeming the Biden Withdrawal invalid would not constitute "effectual relief." *See id.* at 483; *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021).

Plaintiffs also argue that, because the Alaska Litigation involves similar issues and is not moot, this case cannot be moot either. [Dkt. 32 at 12–13]. While the Order of Dismissal in that case did not address mootness, this case is not as closely linked to the Alaska litigation as Plaintiffs believe. *N. Alaska Env't Ctr.*, No. 3:25-cv-38 [Dkt. 65]. The Alaska Litigation challenged the validity of President Trump's EO revoking the Biden Withdrawal, not the validity of the Biden Withdrawal itself. *See* Complaint for Declaratory and Injunctive Relief at ¶¶ 1, 3, *N. Alaska Envtl. Ctr.*, No. 3:25-cv-38 [Dkt. 1]. This distinction is crucial, as President Trump's EO, unlike the Biden Withdrawal, is still in force and is still theoretically causing actual harm. *See* [Dkt. 33 at 3]. Additionally, even if President Trump's EO revoking the Biden Withdrawal is invalid, as the Alaska plaintiffs claimed, it does not follow that the Biden Withdrawal *was* valid. Regardless of the grounds on which the Alaska Litigation was dismissed, this case can be—and is—moot.

**1. Exceptions to Mootness**

**a. Voluntary Cessation**

In a last-ditch effort to keep their case alive, Plaintiffs invoke two exceptions to mootness, starting with the "voluntary cessation" exception. *See* [Dkt. 32 at 6–7]. The voluntary-cessation exception generally applies when a defendant chooses to discontinue its harm-causing conduct, unless "it is absolutely clear" that the conduct "could not reasonably be expected to recur." *Assoc. of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 395 (5th Cir. 2024). In the case of a government defendant, however, the exception's application is more limited. *See Freedom from Religion Found. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023). Because governments are presumed to act in good faith, the voluntary-cessation exception applies

to government defendants only when they are reasonably likely to resume their harmful conduct. *See id.* at 833–34. Proof of a defendant's ability to resume its injurious conduct does not by itself establish a reasonable likelihood that the conduct will resume. *See id.* at 833. Instead, there must be evidence that the defendant intends to resume its wrongful activity once litigation ends. *See id.* at 833.

Because President Trump is a government defendant, the Court must presume that he revoked the Biden Withdrawal in good faith. *Freedom from Religion Found.*, 58 F.4th at 833. Plaintiffs do not attempt to rebut the good-faith presumption as to President Trump himself. [Dkt. 32 at 11]. Instead, Texas insists that the Biden Withdrawal is reasonably likely to be re-enacted by one of President Trump's successors. *Id.* at 6–7. Texas reasons that, because former-president Biden is a Democrat, and another Democrat will likely become president someday, there is a reasonable likelihood that the Biden Withdrawal will be re-instated at some point. *See id.* This argument is too speculative for the Court to accept. *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (A claim that is "contingent on future events that may not occur as anticipated" is "too speculative to be fit for judicial review.") (internal quotations omitted). Before the Biden Withdrawal, no president, Democrat or Republican, had ever attempted a permanent withdrawal of land under the OCSLA. *See* [Dkt. 32-2 at ¶ 39]. Given the Biden Withdrawal's unprecedented nature, the reasonable likelihood of another Democrat becoming president does not equate to a reasonable likelihood of the Biden Withdrawal being re-enacted. *See Freedom from Religion Found.*, 58 F.4th at 833. Because Texas has failed to demonstrate a reasonable likelihood that the Biden Withdrawal will be re-enacted, the voluntary-cessation exception does not apply. *See id.*

**b. Capable of Repetition but Evading Review**

Plaintiffs also invoke the exception to mootness for wrongful conduct that is capable of repetition but evades review. [Dkt. 32 at 8]. This exception applies only in "exceptional circumstances" where the defendant's harm-causing conduct is, by its nature, so fleeting that it cannot be "fully litigated prior to its cessation or expiration" but there remains a reasonable expectation that the same plaintiff will undergo the same harm again. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990); *see also Spencer v. Kemna*, 523 U.S. 1, 17–18 (1998).

This case does not involve conduct that is "capable of repetition but evad[es] review." *See Lewis*, 494 U.S. at 481; *Spencer*, 523 U.S. at 17–18. The Biden Withdrawal was not by its nature so fleeting that it would inevitably expire before the resolution of the case. *See Lewis*, 494 U.S. at 481. Quite the opposite—the Withdrawal *permanently* restricted new leasing and drilling in the areas it applied to. [Dkt. 1 at ¶ 17]. Because the Biden Withdrawal was permanent, it would have remained in effect throughout the duration of Plaintiffs' lawsuit had President Trump not revoked it first. *See id.*

Second, as already discussed, there is no "reasonable likelihood" that the Biden Withdrawal will come back into effect. The Trump administration appears committed to re-opening the eastern Gulf for leasing and drilling, and this Court has no way to assess the likelihood of a hypothetical future administration reviving the Biden Withdrawal. Accordingly, the capable-of-repetition-but-evading-review exception to mootness does not apply. *See Lewis*, 494 U.S. at 481; *Spencer*, 523 U.S. at 17–18.

Try as they might, Plaintiffs cannot escape the reality that, by revoking the Biden Withdrawal, President Trump's EO extinguished any controversy regarding the Biden

Withdrawal's legality. As a result, Plaintiffs' claims are moot and must be dismissed in their entirety.

## IV. CONCLUSION

It is therefore **ORDERED** that Intervenor-Defendants' Motion for Judgment on the Pleadings [Dkt. 26] is hereby **GRANTED**. Plaintiffs' claims are **DISMISSED WITH PREJUDICE.** All pending motions filed herein are **DENIED AS MOOT.**

**THIS IS A FINAL JUDGMENT**. The Clerk of Court is **INSTRUCTED** to close this case.

**SIGNED this 30th day of September, 2026.**

Michael J. Truncale
United States District Judge